414 S.E.2d 877

**Mark A. ROBINSON, Individually and Julia A. Robinson, Individually and as Parent and Natural Guardian of Mark A. Robinson, II, an Infant, Plaintiffs Below, Appellees,**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., a West Virginia Corporation, and Kanoj K. Biswas, M.D., Defendants Below; Kanoj K. Biswas, M.D., Defendant Below, Appellant.**

No. 20109.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1991.

Decided Dec. 20, 1991.

Rehearing Denied Feb. 13, 1992.

Sprague W. Hazard, Charles F. Johns, Steptoe & Johnson, Charleston, for appellant.

William S. Druckman, Lewis, Ciccarello & Friedberg, Charleston, for appellees.

James A. McKowen, Hunt & Wilson, Charleston, for amici curiae West Virginia Trial Lawyers Ass'n and Ass'n of Trial Lawyers of America.

Karen Speidel Rodgers, Kay, Casto, Chaney, Love & Wise, Charleston, for amicus curiae West Virginia State Medical Ass'n.

McHUGH, Justice:

The key issue in this appeal from a judgment in accordance with a jury verdict in favor of the plaintiffs is the constitutionality, *vel non,* of the $1,000,000 "cap" on the amount recoverable for a noneconomic loss in a medical professional liability action provided by *W.Va.Code,* 55–7B–8, as amended. We conclude that such "cap" is constitutional and, therefore, reverse the contrary ruling of the Circuit Court of Kanawha County, West Virginia. On the other hand, we conclude that all of the other assignments of error by Dr. Biswas, the appellant, fail to establish reversible error and, therefore, we affirm the rulings pertaining to those assignments of error.[1]

---

1. The Charleston Area Medical Center, Inc., one of the defendants below, settled with the plaintiffs prior to trial and is not a party to this appeal.

## I.

Mark A. Robinson, II, an infant, has suffered permanent and total brain damage. His life expectancy is, however, normal. The trial theory of his parents on his behalf as the plaintiffs in this medical professional liability action was that the brain damage was caused by a lack of oxygen to his brain during the lengthy labor and the forceps delivery performed negligently by the appellant, Dr. Biswas, in July, 1987. Mark A. Robinson, II also has certain congenital cardiovascular defects. The primary defense of Dr. Biswas, an obstetrician/gynecologist, was that these congenital defects caused the brain damage in question.

The jury returned a verdict in favor of the plaintiffs. The damages awarded, all of which were compensatory, were as follows. Mark A. Robinson, II: $10,000,000 for future medical and nursing costs and costs of care; $750,000 for future lost earnings; $2,500,000 for past, present and future loss of enjoyment of life and other noneconomic damages. Mark A. Robinson (father): $1,000,000 for noneconomic damages. Julia A. Robinson (mother): $1,000,000 for noneconomic damages. The trial court, the Circuit Court of Kanawha County, denied Dr. Biswas' various post-trial motions and entered judgment for the plaintiffs for the total compensatory damages of $15,250,000.

Based upon the constitutionally valid $1,000,000 statutory "cap" on the amount recoverable for a noneconomic loss in a medical professional liability action, we uphold a total damage award to plaintiff Mark A. Robinson, II in the amount of $11,750,000, consisting of $10,750,000 for economic damages and $1,000,000 for recoverable noneconomic loss.

## II.

### A. *The Act*

Effective on and after June 6, 1986,[2] the legislature enacted the West Virginia Medical Professional Liability Act of 1986, *W.Va.Code*, 55–7B–1 to 55–7B–11, as amended ("the Act"). The legislature set forth an elaborate statement of its findings and purpose for the Act. The overriding concern of the legislature was to encourage and facilitate the provision of the best health care services to the citizens of this state. *W.Va.Code*, 55–7B–1 [1986]. The legislature found that in recent years the cost of professional liability insurance for health care providers has risen dramatically and that the nature and extent of coverage concomitantly has diminished, to the detriment of the injured and health care providers. *Id.* Therefore, to provide for a comprehensive, integrated resolution, the legislature determined that reforms in three areas must be enacted together: in (1) the common-law and statutory rights of the citizens to compensation for injury or death in medical professional liability cases; in (2) the regulation of rate making and other health care liability insurance industry practices; and in (3) the authority of medical licensing boards to regulate effectively and to discipline health care providers. *Id.*[3]

In addition to the briefs of the parties to this appeal, which in places lack specific direction, we have reviewed the excellently researched memoranda of law and appendixes thereto submitted by the respective *amici curiae*, the West Virginia Trial Lawyers Association and the Association of Trial Lawyers of America on the one hand and the West Virginia State Medical Association on the other.

2. *W.Va.Code*, 55–7B–10, as amended.

3. *W.Va.Code*, 55–7B–1 [1986] provides in its entirety:

The Legislature hereby finds and declares that *the citizens of this state are entitled to the best medical care and facilities available* and that health care providers offer an essential and basic service *which requires that the public policy of this state encourage and facilitate the provision of such service to our citizens:*

That as in every human endeavor the possibility of injury or death from negligent conduct commands that protection of the public served by health care providers be recognized as an important state interest;

That our system of litigation is an essential component of this state's interest in providing adequate and reasonable compensation to those persons who suffer from injury or death as a result of professional negligence;

That *liability insurance is a key part of our system of litigation, affording compensation to the injured* while fulfilling the need and fair-

One component of the Act is a limit or "cap" of $1,000,000 on the amount recoverable for a *noneconomic* loss in a medical professional liability action against a health care provider. The language of *W.Va. Code*, 55–7B–8, as amended, is as follows: "In any medical professional liability action brought against a health care provider, the maximum amount recoverable as damages for noneconomic loss shall not exceed one million dollars and the jury may be so instructed." A "noneconomic loss" is defined as "losses including, but not limited to, pain, suffering, mental anguish and grief." *W.Va.Code*, 55–7B–2(g) [1986].

### B. *General Principles on Constitutionality*

This $1,000,000 statutory "cap" on a non-economic loss in a medical professional liability action is challenged here as violative of several state constitutional provisions, namely, the equal protection, special legislation, due process, "certain remedy" and jury trial provisions set forth in, respectively, *W.Va. Const.* art. III, § 10 (implied), *W.Va. Const.* art. VI, § 39, *W.Va. Const.* art. III, § 10, *W.Va. Const.* art. III, § 17 and *W.Va. Const.* art. III, § 13. This Court concludes that this statutory "cap" does not violate any of these state constitutional provisions.[4]

 In addressing a claim that legislation is unconstitutional, we start with the fundamental precept that the powers of the legislature are almost plenary: "The Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. pt. 1, *Foster v. Cooper*, 155 W.Va. 619, 186 S.E.2d 837 (1972).[5] Moreover, in light of the constitutionally required principle of

---

ness of spreading the cost of the risks of injury;

That a further important component of these protections is the capacity and willingness of health care providers to monitor and effectively control their professional competency, so as to protect the public and ensure to the extent possible the highest quality of care;

That it is *the duty and responsibility of the Legislature to balance the rights of our individual citizens to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers who can themselves obtain the protection of reasonably priced and extensive liability coverage;*

That *in recent years, the cost of insurance coverage has risen dramatically while the nature and extent of coverage has diminished, leaving the health care providers and the injured without the full benefit of professional liability insurance coverage;*

That many of the factors and reasons contributing to the increased cost and diminished availability of professional liability insurance arise from the historic inability of this state to effectively and fairly regulate the insurance industry so as to guarantee our citizens that rates are appropriate, that purchasers of insurance coverage are not treated arbitrarily, and that rates reflect the competency and experience of the insured health care providers.

Therefore, *the purpose of this enactment is to provide for a comprehensive resolution* of the matters and factors which the Legislature finds must be addressed to accomplish the goals set forth above. In so doing, the Legislature has determined that *reforms in the* *common law and statutory rights of our citizens to compensation for injury and death, in the regulation of rate making and other practices by the liability insurance industry, and in the authority of medical licensing boards to effectively regulate and discipline the health care providers under such board must be enacted together as necessary and mutual ingredients of the appropriate legislative response.* (emphasis added)

4. *W.Va. Const.* art. III, § 10 provides expressly this state's due process clause and implicitly this state's equal protection clause: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his [or her] peers."

*W.Va. Const.* art. VI, § 39 provides, in pertinent part: "[I]n no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case[.]"

The relevant portion of *W.Va. Const.* art. III, § 17 states: "The courts of this State shall be open, and every person, for an injury done to him [or her], in his [or her] person, property or reputation, shall have remedy by due course of law[.]"

*W.Va. Const.* art. III § 13 contains this relevant language: "In suits at common law ... the right of trial by jury, if required by either party, shall be preserved; ... No fact tried by a jury shall be otherwise reexamined in any case than according to rule of court or law."

5. The *Constitution of the United States,* particularly the fourteenth amendment thereto, may also inhibit the legislature from enacting certain legislation.

the separation of powers among the judicial, legislative and executive branches of state government, *W.Va. Const.* art. V, § 1, courts ordinarily presume that legislation is constitutional, and the negation of legislative power must be shown clearly:

'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

Syl. pt. 2, *West Virginia Public Employees Retirement System v. Dodd,* 183 W.Va. 544, 396 S.E.2d 725 (1990). *Accord,* syl. pt. 3, *Randall v. Fairmont City Police Department,* 186 W.Va. 336, 412 S.E.2d 737 (1991); syl. pt. 1, *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991).

■ Accordingly, a facial challenge to the constitutionality of legislation is the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Lewis,* 185 W.Va. at 691, 408 S.E.2d at 641.

■ We now turn specifically to equal protection challenges to legislation. Most legislative classifications, including those which involve economic rights, are subjected to a minimum level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose. We recently reformulated this "rational basis" type of equal protection analysis in syllabus point 4 of *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991):

' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* [174] W.Va. [538], 328 S.E.2d 144 (1984).

*Accord,* syl. pt. 4, *Randall v. Fairmont City Police Department,* 186 W.Va. 336, 412 S.E.2d 737 (1991); syl. pt. 2, *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991).[6]

■ A corollary principle is that the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. *Lewis,* 185 W.Va. at 692, 408 S.E.2d at 642.

■ With respect to the "certain remedy" provision of the *Constitution of West Virginia,* the governing principles in this area are set forth in syllabus points 4–5 of

---

**6.** For a brief discussion of the "strict scrutiny" and so-called "middle-tier" tests for equal protection analysis of certain statutory classifications see *Lewis,* 185 W.Va. at 691, 408 S.E.2d at 641. Neither of those two tests is applicable here.

*Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991):

4. 'There is [ordinarily] a presumption of constitutionality with regard to legislation. However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated.' Syl. pt. 6, *Gibson v. West Virginia Department of Highways*, [185] W.Va. [214], 406 S.E.2d 440 (1991).

5. When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the *Constitution of West Virginia*, the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose.

*Accord*, syl. pt. 1, *Randall v. Fairmont City Police Department*, 186 W.Va. 336, 412 S.E.2d 737 (1991).

We stressed in *Lewis* that the "certain remedy" provision itself states that the "remedy" constitutionally guaranteed "for an injury done" to protected interests is qualified by the words, "by due course of law[,]" thereby extending considerable latitude to the legislature. In addition, we recognized that the general authority of the legislature to alter or repeal the common law is expressly conferred by article VIII, section 13 of the *Constitution of West Virginia*. *Lewis*, 185 W.Va. at 694, 408 S.E.2d at 644.[7]

This Court in *Lewis* observed that the economic basis underlying a tort action for damages indicates that the right to bring such an action is not a fundamental right in the sense that any limitation on that right requires strict scrutiny under the "certain remedy" provision. Instead, the legislature may reasonably consider clear economic or social conditions in this state in deciding to alter or repeal the common law. *Lewis*, 185 W.Va. at 694, 695, 408 S.E.2d at 644, 645.

### C. Precedents on Constitutionality of "Caps" on Noneconomic Losses in Medical Malpractice Actions

Turning to the application of these general principles on constitutionality of legislation, we observe first that there is a fairly even split of authorities elsewhere on the precise question presented here, specifically, the constitutionality of a statutory limit, or "ceiling" or "cap," on the amount recoverable for a *non*economic loss in a medical malpractice action, or in any personal injury action, where no public insurance fund for plaintiffs in such an action was created at the same time as the "cap." Those precedents upholding the constitutionality of such a statutory "cap" include: *Davis v. Omitowoju*, 883 F.2d 1155, 1158–65 (3d Cir.1989) ($250,000 limit by Virgin Islands statute; federal constitutional right to jury trial, federal constitutional substantive due process, federal constitutional equal protection); *Boyd v. Bulala*, 877 F.2d 1191, 1195–97 (4th Cir.1989) ($750,000 limit on *all* damages by Virginia statute; federal constitutional right to jury trial; federal constitutional substantive due process and equal protection); *Franklin v. Mazda Motor Corp.*, 704 F.Supp. 1325, 1330–38 (D.Md.1989) ($350,000 limit by Maryland statute, in a personal injury action; federal or state constitutional right to jury trial, state constitutional separation of powers, "certain remedy," federal or state constitutional substantive due process); *Fein*

---

7. *W.Va. Const.* art. VIII, § 13 in its entirety states:

Except as otherwise provided in this article, such parts of the *common law*, and of the laws of this State as are in force on the effective date of this article [1872] and are not repugnant thereto, shall be and continue the law of this State *until altered or repealed by the legislature.*
(emphasis added)

*v. Permanente Medical Group,* 38 Cal.3d 137, 695 P.2d 665, 679–84, 211 Cal.Rptr. 368, 382–87 (en banc) ($250,000; state constitutional substantive due process, state constitutional equal protection), *appeal dismissed for want of substantial federal question,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985); *Samsel v. Wheeler Transport Services, Inc.,* 246 Kan. 336, 789 P.2d 541 (1990) ($250,000 in any personal injury action; state constitutional right to jury trial, "certain remedy," state constitutional equal protection), *overruled on another point, Bair v. Peck,* 248 Kan. 824, 811 P.2d 1176, 1189, 1191 (1991); *Edmonds v. Murphy,* 83 Md.App. 133, 573 A.2d 853, 857–68 ($350,000 in a personal injury action; state constitutional right to jury trial, "certain remedy," state or federal constitutional substantive due process, state constitutional separation of powers, state or federal constitutional equal protection), *cert. granted,* 321 Md. 46, 580 A.2d 1066 (1990). *See also Etheridge v. Medical Center Hospitals,* 237 Va. 87, 376 S.E.2d 525, 528–34 (1989) ($750,000 limit on *all* damages; state constitutional right to jury trial, state or federal constitutional substantive due process, state constitutional separation of powers, special legislation, state or federal constitutional equal protection) (this "cap" on *all* damages in Virginia is now $1,000,-000).

On the other hand, those precedents holding a statutory "cap" on the amount recoverable for a *non*economic loss in a medical malpractice action, or in any personal injury action, to be unconstitutional, where no public insurance fund for plaintiffs in such an action was created at the same time as the "cap," include: *Smith v. Department of Insurance,* 507 So.2d 1080, 1087–89 (Fla.1987) (per curiam) ($450,000 in all tort actions; "certain remedy"); *Brannigan v. Usitalo,* 134 N.H. 50, 587 A.2d 1232 (1991) ($875,000 in a personal injury action; state constitutional equal protection); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 830–31, 836–38 (1980) ($250,000; state constitutional equal protection); *Morris v. Savoy,* 61 Ohio St.3d 684, 576 N.E.2d 765, 768–72 (1991) ($200,000; state constitutional substantive due process violated;

state constitutional equal protection *not* violated); *Sofie v. Fibreboard Corp.,* 112 Wash.2d 636, 771 P.2d 711, 715–27 (en banc) ("cap" on noneconomic damages, in personal injury or wrongful death actions; that "cap" is calculated by a formula based upon life expectancy and average annual wage of injured person; state constitutional right to jury trial; three strong dissenting opinions), *modified on another point,* 780 P.2d 260 (Wash.1989). *See also Lucas v. United States,* 757 S.W.2d 687 (Tex. 1988) ($500,000 for noneconomic *and* nonmedical economic damages, or, alternatively, $150,000 for noneconomic damages; "certain remedy").

These opinions invalidating statutory "caps" on noneconomic damages in medical malpractice actions, or in any personal injury action, are not persuasive in this jurisdiction. *Smith,* the Florida opinion, required, for "certain remedy" purposes, a showing of "overpowering public necessity" for the legislative alteration or repeal of the common-law right or remedy, in the absence of a legislatively substituted reasonable alternative remedy. 507 So.2d at 1088, 1089. As stated above, however, the test in this jurisdiction for "certain remedy" purposes requires the existence of a "clear social or economic problem," and the legislative alteration or repeal of the common-law right or remedy must be a reasonable method of eliminating or curtailing the "clear social or economic problem," in a case in which there is no legislatively substituted reasonable alternative remedy. Syl. pt. 5, *Lewis v. Canaan Valley Resorts, Inc.* Thus, the Florida "certain remedy" test imposes a higher level of scrutiny than does the West Virginia "certain remedy" test.

■ *Brannigan* and *Carson,* the New Hampshire opinions, applied, to statutory "caps" on noneconomic damages, the so-called "middle-tier" level of scrutiny for state constitutional equal protection purposes. *See supra* note 6. On the other hand, as we concluded in *Lewis v. Canaan Valley Resorts, Inc.* and in *Gibson v. West Virginia Department of Highways,* the right to bring a tort action for damages,

even though there is court involvement, is economically based and is not a "fundamental right" for "certain remedy" or state constitutional equal protection purposes. *Lewis*, 185 W.Va. at 694, 408 S.E.2d at 644; *Gibson*, 185 W.Va. at 218, 406 S.E.2d at 444. Similarly, "[a] statutory limitation on [a common-law measure of] recovery is simply an economic regulation, which is entitled to wide judicial deference." *Etheridge v. Medical Center Hospitals*, 237 Va. 87, 376 S.E.2d 525, 531 (1989). Thus, the "rational basis" test for state constitutional equal protection purposes is applicable in this jurisdiction to statutory abrogation of certain common-law causes of action [8] or to statutory limitation on remedies in certain common-law causes of action, such as statutory "caps" on the recoverable amount of damages.

*Morris*, the Ohio opinion, is materially distinguishable. The state medical malpractice act there required an annual report from the superintendent of insurance on the "effectiveness" of fifteen of the act's thirty-six statutory sections "in reducing medical malpractice insurance premiums[.]" The statutory section imposing the $200,000 "cap" on noneconomic damages was not listed among the statutory sections which the legislature obviously believed would have an impact on insurance premiums. Therefore, the court in that case believed there was no legislative recognition of a rational connection between awards of such damages over the $200,000 "cap" and medical malpractice insurance rates. 576 N.E.2d at 770. Here, in contrast, *W.Va.Code*, 55–7B–8, as amended, imposing the "cap" in question, is an integral part of the comprehensive resolution of the clear social and economic problem reasonably perceived by the legislature in enacting the Act. *See supra* note 3.

### D. *Constitutionality of W.Va.Code, 55–7B–8*

■ The precedents elsewhere upholding the constitutionality of a statutory "cap"

on the amount recoverable for a *noneconomic* loss in a medical malpractice action, or in personal injury actions in general, provide persuasive analyses of the issues.

With respect to the challenges here under the state constitutional equal protection or special legislation provisions, the claim of impermissible discrimination under the statutory "cap" at issue is twofold: *W.Va. Code*, 55–7B–8, as amended, allegedly discriminates impermissibly between (1) medical professional liability victims and other tort victims and between (2) medical professional liability victims with a noneconomic loss not exceeding $1,000,000 and medical professional liability victims with a noneconomic loss exceeding $1,000,000.

The California Supreme Court, in *Fein*, rejected these same two claims with respect to the California statutory "cap" of $250,000 for noneconomic damages in a medical malpractice action. Concerning the first claim, the court held that the legislature's limited application of the statutory "cap" (on the amount of recoverable noneconomic damages) to medical malpractice actions, instead of applying the "cap" to all tort actions, did not violate state constitutional equal protection principles because the legislature had responded at that time to a liability insurance "crisis" in the particular area of medical malpractice, and the statute is rationally related to the legitimate state purposes of furthering the collectibility of judgments against tortfeasors who are health care providers and of promoting the continued delivery of high quality health care to the citizens of the state. 695 P.2d at 682, 680, 211 Cal.Rptr. at 385–86, 383. As was stated in *Dandridge v. Williams*, 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503 (1970), "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. It is enough that the State's action be rationally

---

**8.** *See* syl. pts. 4–5, *Randall v. Fairmont City Police Department*, 186 W.Va. 336, 412 S.E.2d 737 (1991) (broad statutory abrogation of common-law right to bring tort action against local governmental entities); syl. pts. 2–3, *Lewis v.* *Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991) (broad statutory abrogation of common-law right to bring tort action against ski area operators).

based and free from invidious discrimination." (internal citation omitted)

Concerning the second claim of impermissible discrimination, the California Supreme Court, in *Fein,* held that the statutory "cap" did not violate state constitutional equal protection principles because the legislature may have believed reasonably that it was fairer to medical malpractice plaintiffs in general to reduce only the very large noneconomic damage awards, rather than to establish a lower "cap" and thereby diminish the more modest recoveries for noneconomic damages which occur in the great bulk of cases. 695 P.2d at 683, 211 Cal.Rptr. at 386.[9] In this regard, the $1,000,000 "cap" in question here is the largest "cap" on noneconomic damages of which this Court is aware. In fact, it is higher than almost every "cap" elsewhere on *all* (or total) damages.

This Court agrees with these points from *Fein.* In addition, we note that the court in *Fein* observed that the statutory "cap" there, like here, placed no limit on the recovery of economic (or "pecuniary" or "special") damages, but only on noneconomic damages, which are *open-ended* at common law. The court then said:

Faced with the prospect that, in the absence of some cost reduction, medical malpractice plaintiffs might as a realistic matter have difficulty collecting judgments for *any* of their damages—pecuniary as well as nonpecuniary—the Legislature concluded that it was in the public interest to attempt to obtain some cost savings by limiting noneconomic damages. Although reasonable persons can certainly disagree as to the wisdom of this provision, we cannot say that it is not rationally related to a legitimate state interest.

695 P.2d at 681, 211 Cal.Rptr. at 384–85 (emphasis in original) (internal footnote omitted).

■ We emphasize at this point that our holding that the statutory "cap" at issue is reasonable is limited to the particular $1,000,000 "cap" before us. "[A]ny modification the legislature [would] make[ ] is subject to being stricken as unconstitutional. A reduction of non[economic] damages to a lesser cap at some point would be manifestly so insufficient as to become a denial of justice[,]" under, for example, the state constitutional equal protection or "certain remedy" provisions. *Lucas v. United States,* 757 S.W.2d 687, 700 (Tex. 1988) (Gonzales, J., dissenting).

■ With respect to the challenges here under the state constitutional substantive due process and "certain remedy" provisions, the principal claims are in essence that there was no clear social or economic problem in the form of a medical malpractice insurance "crisis" or, even if one existed, the statutory "cap" in question was not a reasonable method of eliminating or curtailing the problem, as the legislature arguably could only speculate as to the "cap's" effect on medical malpractice insurance premiums. However, courts ordinarily will not reexamine independently the factual basis for the legislative justification for a statute. Instead, the inquiry is whether the legislature reasonably could conceive to be true the facts on which the challenged statute was based. *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 831 (1980). Similarly, "[i]n addressing complicated social and economic problems, the Legislature must be free to attempt a remedy, even when the results are uncertain. In the real world, social policy must frequently be made on the basis of incomplete and even conflicting information[.]" *Lucas v. United States,* 757 S.W.2d 687, 720 (Tex.1988) (Phillips, C.J., dissenting). "To turn constitutionality on the presence of a declaration of certitude might serve only to reward arrogance, ignorance or hypocrisy." *Id.*

■ With respect to the challenge here under the state constitutional provision on the right to a jury trial, *see supra* note 4 (last paragraph thereof), this Court con-

9. *See also Lucas v. United States,* 757 S.W.2d 687, 720 (Tex.1988) (statutory "cap" on certain damages was reasonably related to a rationally perceived social evil; while impact on those catastrophically injured persons who are denied full recovery should not be minimized, "cap" is a reasonable exercise of police power in interest of general welfare) (Phillips, C.J., dissenting).

cludes that the predetermined, legislative limit on the recoverable amount of a noneconomic loss in a medical professional liability action does not violate the "reexamination" clause of such jury trial provision. The language of the "reexamination" clause of the constitutional right to a jury trial, *W. Va. Const.* art. III, § 13, does not apply to the legislature, fixing in advance the amount of recoverable damages in all cases of the same type, but, instead, applies only to the judiciary, acting "in any [particular] case[.]" *Davis v. Omitowoju,* 883 F.2d 1155, 1165 (3d Cir.1989) (same under "reexamination" clause of federal constitutional right to jury trial, which is virtually identical to the "reexamination clause" of *W. Va. Const.* art. III, § 13). We concur with these comments made in *Franklin v. Mazda Motor Corp.,* 704 F.Supp. 1325, 1331–32 (D.Md.1989):

> [A] legislature adopting a prospective rule of law that limits all claims for pain and suffering in all cases is not acting as a fact finder in a legal controversy. It is acting permissibly within its legislative powers that entitle it to create and repeal causes of action. The right of jury trials in cases at law is not impacted. Juries always find facts on a matrix of laws given to them by the legislature and by precedent, and it can hardly be argued that limitations imposed by law are a usurpation of the jury function....
>
> ....
>
> The power of the legislature [reasonably] to define, augment, or even abolish complete causes of action must necessarily include the power to define [reasonably] by statute what damages may be recovered by a litigant with a particular cause of action....
>
> Particularly in the area of damages for pain and suffering, [which are, otherwise, open-ended,] the legislature acts within its power in creating reasonable limits on the causes of action and recoverable damages it chooses to allow in the courts of law.

*See also Boyd v. Bulala,* 877 F.2d 1191, 1196 (4th Cir.1989) (federal constitutional right to jury trial); *Edmonds v. Murphy,* 83 Md.App. 133, 573 A.2d 853, 857–59, *cert.* *granted,* 321 Md. 46, 580 A.2d 1066 (1990); *Etheridge v. Medical Center Hospitals,* 237 Va. 87, 376 S.E.2d 525, 528–29 (1989).

Based upon all of the foregoing, this Court holds that *W. Va. Code,* 55–7B–8, as amended, which provides a $1,000,000 limit or "cap" on the amount recoverable for a noneconomic loss in a medical professional liability action is constitutional. It does not violate the state constitutional equal protection, special legislation, state constitutional substantive due process, "certain remedy," or right to jury trial provisions. *W. Va. Const.* art. III, § 10; *W. Va. Const.* art. VI, § 39; *W. Va. Const.* art. III, § 10; *W. Va. Const.* art. III, § 17; and *W. Va. Const.* art. III, § 13, respectively.

### III.

The next issue is whether the $1,000,000 statutory "cap" on the amount recoverable for a noneconomic loss in a medical professional liability action, provided by *W. Va. Code,* 55–7B–8, as amended, applies to the aggregated claims of all plaintiffs, as opposed to each plaintiff separately.

The language of the statutory "cap," quoted in subsection II(A) of this opinion, *supra,* is phrased in terms of the maximum amount recoverable from a health care provider, not in terms of the maximum amount recoverable by a plaintiff. Stated another way, the very high statutory "cap" in question is, with respect to each defendant health care provider, on a "per occurrence" basis, rather than on a "per person" ("per plaintiff") basis.

We, therefore, hold that *W. Va. Code,* 55–7B–8, as amended, which provides that "the maximum amount recoverable as damages for noneconomic loss" in a medical professional liability action "against a health care provider" is $1,000,000, applies as one overall limit to the aggregated claims of all plaintiffs against a health care provider, rather than applying to each plaintiff separately. Authorities supporting this holding include: *Starns v. United States,* 923 F.2d 34, 37–38 (4th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991);

*Boyd v. Bulala,* 905 F.2d 764, 767 (4th Cir.1990); *LaMark v. NME Hospitals, Inc.,* 542 So.2d 753, 755–56 (La.Ct.App.), *writ denied,* 551 So.2d 1334 (La.1989); *Bulala v. Boyd,* 239 Va. 218, 389 S.E.2d 670, 674–75 (1990).[10]

Therefore, in the present case, all three of the awards by the jury, for noneconomic loss, to the three plaintiffs (the physically injured infant and both parents) are subject to the same, overall "cap" of $1,000,000, and the excess of $3,500,000 awarded by the jury for that type of loss above the $1,000,000 limit must, under the statute, be set aside as a matter of law.[11]

## IV.

Dr. Biswas' other assignments of error refer to matters which, variously, constitute harmless error on the whole record, or no error because the trial court did not abuse its discretion in the matter.

■ An assignment of error which involves harmless error is, for example, the assignment referring to the trial court's admission of the rebuttal testimony of Dr. Steinfeld, for the plaintiffs, to the effect that he had felt two carotid pulses. That testimony went toward establishing that the infant plaintiff had a left, as well as a right, carotid artery, contrary to one of the theories of Dr. Biswas that the absence of the left carotid artery as a congenital defect, and the resulting lack of blood flow to the brain, had caused the brain damage at issue. Dr. Steinfeld's testimony for the plaintiffs on this point was admitted, over Dr. Biswas' timely objection, despite the fact that the trial court had ruled earlier that the plaintiffs would not be permitted to introduce evidence of this nature because they had (ultimately) refused to submit the infant plaintiff to a certain physical examination on this point by Dr. Biswas' medical expert, in violation of the court's (eventual) order requiring submission to that physical examination. *See W.Va. R.Civ.P.* 35(a), 37(b)(2)(B). While the admission of Dr. Steinfeld's testimony on this point was, therefore, error, it was harmless error because the pediatric records of the infant plaintiff were already in the record, without objection, and the jury reasonably could find from the pediatric records that the left carotid artery was present at birth.

An assignment of error which involves the exercise of sound discretion by the trial court is, for example, the assignment referring to the admissibility of the plaintiffs' expert evidence on the loss of future earnings and on the reasonable necessity of the future services for care of the infant plaintiff for life. The record indicates that the trial court did not abuse its discretion in ruling that a sufficient foundation had been laid for the admissibility of this evidence. The jury was entitled to weigh the experts' qualifications and testimony in this area.

■ With respect to the loss of future earnings, a Mr. Selby, a certified public accountant, estimated this type of economic damages to be incurred by Mark A. Robinson, II, over a normal life expectancy for a male child of his age. Mr. Selby's estimation of lost future earnings was based upon three "average life" scenarios, reduced to present value: $152,809 for a minimum-wage worker; $458,128 for a high school graduate; and $785,613 for a college graduate. The $750,000 awarded by the jury for this type of economic damage was within this range supported by the evidence.

■ With respect to the cost and reasonable necessity of the future services for medical and other special care and for spe-

10. The contrary result, applying the statutory "cap" to each plaintiff separately, was reached in, for example, *Atkins v. Strayhorn,* 223 Cal. App.3d 1380, 273 Cal.Rptr. 231, 238–40 (1990), but the "cap" there was phrased in terms of the maximum amount recoverable by a plaintiff ("the injured plaintiff shall be able to recover").

11. Like the United States Court of Appeals for the Fourth Circuit in *Starns* and *Boyd v. Bulala,* we believe awards in excess of the statutory "cap" should be set aside by eliminating awards to secondary claimants, such as for consortium, prior to eliminating any excessive amount for the noneconomic loss incurred by the physically injured person. Thus, here, each of the parents' respective $1,000,000 awards are set aside, and $1,500,000 of the award for the noneconomic loss of Mark A. Robinson, II is then set aside, leaving a recoverable $1,000,000 award for the noneconomic loss of Mark A. Robinson, II.

cial equipment for Mark A. Robinson, II, over a normal life expectancy, the evidence consisted of a report and the live testimony of a Ms. Sporer, a registered nurse and rehabilitation coordinator. That report, as modified by Drs. Morgan and Kitts, listed various rates per hour for the expected special care services and listed various costs and replacement intervals for the special equipment and the like expected to be needed. The total costs of $25,143,671 were then reduced by Mr. Selby to the present value amount of $10,176,357. All of this evidence was uncontroverted. The $10,000,000 awarded by the jury for this type of economic damage was, therefore, supported by the evidence.[12]

## V.

For the reasons stated in section II of this opinion, the ruling of the trial court on the recoverable amount of damages for the noneconomic loss is reversed, and the amount recoverable for such loss is $1,000,000.

On the other hand, for the reasons stated in section IV of this opinion, we believe that each of Dr. Biswas' other assignments of error, relating primarily to discovery and evidentiary matters, fail to establish reversible error. Therefore, the trial court's rulings on these matters are affirmed.

Affirmed in part; reversed in part.

12. Finally, we do not decide the plaintiffs' cross-appeal concerning their claim that Dr. Biswas distorted the facts about restrictions on his clinical privileges at the Charleston Area Medical Center. The plaintiffs were not prejudiced by this evidence, as they prevailed at trial.