686 S.E.2d 746

**Andrea KARPACS–BROWN, Individually and as Administratrix of the Estate of Her Mother, Elizabeth Karpacs, and the Estate of Her Father, Andrew Karpacs, Plaintiff Below, Appellee**

v.

**Anandhi MURTHY, M.D., Defendant Below, Appellant.**

No. 34747.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2009.

Decided Nov. 19, 2009.

Dissenting Opinion of Justice Workman Nov. 24, 2009.

Stephen R. Brooks, Esq., Robert C. James, Esq., Flaherty, Sensabaugh & Bonasso, Wheeling, Alfred F. Belcuore, Esq. pro hac vice Montedonico, Belcuore & Tazzara Washington, D.C., for Appellant.

Christopher J. Regan, Esq., Geoffrey C. Brown, Esq., Bordas & Bordas, Wheeling, for Appellee.

PER CURIAM:

The appellant, Anandhi Murthy, M.D., appeals two orders entered by the Circuit Court of Wetzel County on July 29, 2008, in the underlying wrongful death action brought against her. One order denied Dr. Murthy's motion to alter the jury verdict, and entered judgment against her for $4 million plus pre-and post-judgment interest. The other order awarded attorney fees and costs against Dr. Murthy. For the reasons set forth below, we affirm in part, reverse in part, and remand this case to the circuit court for proceedings consistent with this opinion.

## I.

## FACTS

At 7:08 a.m. on June 1, 2001, Elizabeth Karpacs arrived in the Wetzel County Hospital Emergency Room with abdominal discomfort, nausea, vomiting, and diarrhea. Lab tests indicated that Mrs. Karpacs had a highly elevated white blood cell count, and x-rays revealed that Mrs. Karpacs may have been suffering from an ischemic condition in her colon. After receiving this information, Mrs. Karpacs' family physician sought a surgical consult from the appellant, Dr. Anandhi Murthy.

After Mrs. Karpacs' admission into the hospital's intensive care unit, Dr. Murthy proceeded to attempt to rehydrate Mrs. Karpacs by means of an intravenous solution and to prescribe antibiotics. Throughout the day and evening, Dr. Murthy adjusted the amount of fluids given to Mrs. Karpacs. Dr. Murthy last visited Mrs. Karpacs at about 8:20 p.m.

After being advised to go home and come back the next day, the Karpacs family was suddenly called back to the hospital late that night and informed that nothing else could be done for Mrs. Karpacs. Mrs. Karpacs' family subsequently executed a "do not resuscitate" or DNR order. Mrs. Karpacs eventually slipped into shock and died at 5:55 a.m. on June 2, 2001, apparently from the effects of a dead bowel.

Mrs. Karpacs' daughter, Andrea Karpacs–Brown, the appellee, thereafter brought a wrongful death action against Dr. Murthy, individually and as the administratrix of the estates of her mother and father.[1] Mediation failed and a trial was held in the Circuit Court of Wetzel County from January 22, 2008, to January 25, 2008. The appellee presented expert testimony that Dr. Murthy failed to rehydrate Mrs. Karpacs sufficiently to prepare her for exploratory abdominal surgery which was necessary to preserve Mrs. Karpacs' life. Dr. Murthy presented expert testimony that due to underlying conditions suffered by Mrs. Karpacs she could not have been rehydrated more aggressively in preparation for surgery. In addition, the appellee and her two siblings testified of their close relationship with their mother and the pain they endured as a result of her death.

At the close of the evidence, the jury found that Dr. Murthy's negligence caused or substantially contributed to Mrs. Karpacs' death. The jury awarded $1 million each to the appellee, her two siblings, and for the pain and suffering of Mrs. Karpacs prior to her death for a total verdict of $4 million. In its July 29, 2008, judgment order, the circuit court denied Dr. Murthy's motion to alter the jury verdict to conform to the $1 million limit on non-economic damages in W. Va.Code § 55–7B–8 (1986).[2] The circuit court entered judgment on behalf of the appellee in the amount of $4 million plus $1,992,238.77 in prejudgment interest and $1,600.67 per day from January 25, 2008, until the judgment is satisfied. In a separate order also entered on July 29, 2008, the circuit court granted the appellee's motion for attorney fees and costs.

---

1. Elizabeth Karpacs' husband, Andrew Karpacs, originally brought this action against Dr. Murthy. When Andrew Karpacs died, the appellee took his place in her capacity as the administratrix of her parents' estates.

2. This code section was amended effective July 1, 2003, to decrease the limit on non-economic damages. See n. 3, infra.

On appeal to this Court, Dr. Murthy alleges several errors with regard to an evidentiary ruling made during the trial, the validity of the verdict rendered against her, and the circuit court's award of attorney fees and costs to the appellee. This Court will now proceed to address the issues raised by Dr. Murthy.

## II.

## DISCUSSION

■ Dr. Murthy first claims that the circuit court erred in denying her the opportunity to respond to the appellees' testimony by proffering evidence of the DNR order. In considering this issue, this Court is mindful that "[a]bsent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Prior to trial, the circuit court ruled that evidence of the DNR order would be precluded at trial. Dr. Murthy does not challenge this ruling. Instead, Dr. Murthy argues that the appellee introduced evidence that Mrs. Karpacs' family would have taken measures at any time on June 1, 2001, and the early morning hours of June 2, 2001, to save Mrs. Karpacs. According to Dr. Murthy, this evidence conflicts with the family's consent to a DNR order. Dr. Murthy also complains that the appellee asserted at trial that Dr. Murthy abandoned Mrs. Karpacs. Dr. Murthy contends that she should have been permitted to introduce evidence of the DNR order to impeach the appellee's claim of abandonment. According to Dr. Murthy, the circuit court's refusal to allow her to introduce evidence of the DNR order to impeach the appellee's evidence prejudiced her attempt to defend herself against the appellee's allegations. The appellee responds that evidence introduced at trial has no connection to a DNR order entered at 12:30 a.m., the morning after Dr. Murthy's claimed inaction had already doomed her mother.

■ We agree with the appellee. Any malpractice that Dr. Murthy committed occurred prior to the entering of the DNR order. Also, the fact that Mrs. Karpacs' family consented to the DNR order did not abrogate Dr. Murthy's duty to provide competent medical care. In addition, there is no evidence that Dr. Murthy knew of the DNR order at the time it was executed or that it affected her conduct in any way. Therefore, we conclude that the circuit court did not abuse its discretion in precluding the introduction of evidence of the DNR order as impeachment evidence, and we affirm the circuit court on this issue.

■ In her next two assignments of error, Dr. Murthy challenges the sufficiency of the evidence to support various parts of the jury verdict. In considering these issues, this Court is cognizant that

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983).

■ First, Dr. Murthy alleges that the award of damages for Mrs. Karpacs' pain and suffering was error because there was insufficient proof of such damages. Dr. Murthy posits that no evidence was offered to prove that Mrs. Karpacs suffered conscious pain as a proximate result of Dr. Murthy's actions. According to Dr. Murthy, the pain suffered by Mrs. Karpacs upon her arrival at the hospital cannot be attributed to Dr. Murthy. Also, while at the hospital, Mrs. Karpacs was made comfortable through treatment. Finally, Dr. Murthy asserts that there is no assurance that Mrs. Karpacs would have been pain free had Dr. Murthy performed exploratory abdominal surgery on her.

The appellee counters that Mrs. Karpacs entered the hospital with a very painful condition, and evidence shows that Dr. Murthy's

failure to treat this condition needlessly prolonged her pain. Also, there is evidence that Mrs. Karpacs began exhibiting signs of shock at approximately 8:20 p.m. Later, Mrs. Karpacs' daughter noticed that she was cold and clammy and had a difficult time responding. As Mrs. Karpacs' condition worsened, a full oxygen mask was placed on her which made communicating with her family difficult. There was also evidence that Mrs. Karpacs had to say goodbye to her family, including a young grandchild, in her final hours.

Again, we find no error on this issue. The jury found that Dr. Murthy's negligence caused Mrs. Karpacs' death. As a result, it is reasonable for the jury to infer that the physical pain and emotional turmoil suffered by Mrs. Karpacs as a result of her deteriorating condition were also caused by Dr. Murthy's negligence. Therefore, we find no merit to Dr. Murthy's alleged error on this issue, and we affirm the circuit court.

Next, Dr. Murthy avers that the circuit court erred in not reducing the $4 million damages award to conform to the 1986 version of W. Va.Code § 55–7B–8, of the Medical Professional Liability Act, which set the maximum recoverable amount for all non-economic loss at $1 million.[3] Specifically, Dr. Murthy contends that no evidence of economic loss was offered by the appellee at trial. Instead, the claims were for Mrs. Karpacs' pain and suffering, and her children's claims were for sorrow suffered from losing their mother. According to Dr. Murthy, there was no effort to cast Mrs. Karpacs' relationship to her children in economic terms. Mrs Karpacs was not described as someone who baby sat her grandchildren, cooked for her children or grandchildren, or otherwise performed specific, quantifiable services.

In its order denying Dr. Murthy relief from the verdict, the circuit court found that Dr. Murthy's failure to ask for a verdict form that clearly separated economic from non-economic damages or to ask for an interrogatory separating economic loss from non-eco-

nomic loss is fatal to Dr. Murthy's request for a review of the damages awarded. The circuit court relied on this Court's decision in *Gerver v. Benavides*, 207 W.Va. 228, 530 S.E.2d 701 (1999), for its decision in this matter.

In *Gerver*, the plaintiff sued his surgeon for allegedly botching his vasectomy surgery. The plaintiff presented evidence at trial of lost future earning capacity as follows:

> [T]he plaintiff's physicians testified to the permanence of the plaintiff's injury, and one testified that the effects of the injury were "crippling" to the plaintiff. One physician testified that nothing further could be done surgically for the plaintiff which would reduce or eliminate his pain. Furthermore, [the plaintiff] testified that, because of his chronic pain and his dependence on methadone to function, he was unable to return to gainful employment. The jury was presented with records showing the plaintiff's past wages and benefits (such as health insurance); with evidence that the plaintiff could no longer earn these wages and benefits; and with evidence that the plaintiff was a 34 year-old-man with a life expectancy of 41.4 more years.

*Gerver*, 207 W.Va. at 233–234, 530 S.E.2d at 706–707 (footnote omitted). Both the jury instructions and the verdict form merged economic damages with non-economic damages. The defendant did not object to the verdict form's merger of certain economic and non-economic damages together under the heading of "general damages" and did not submit special interrogatories that would allow the jury to separate economic from non-economic losses. Specifically, the verdict form stated as follows with regard to general damages:

> We the jury, further find, with regard to GENERAL DAMAGES including the following categories:
>
> —For medical expenses in the future; and

**3.** Because the appellee commenced her action against Dr. Murthy on May 23, 2003, prior to July 1, 2003, the date the 2003 amendments to W. Va.Code § 55–7B–8 went into effect, *see* W. Va.Code § 55–7B–10 (2003), the $1 million limit on non-economic damages applies to her case.

Under the 2003 version of the statute, the maximum amount recoverable as compensatory damages for non-economic loss is $500,000 where the damages for non-economic loss suffered by the plaintiff are for wrongful death.

—For past and future physical pain and suffering and mental anguish; and

—For loss or impairment of future earning capacity and benefits; and

—For loss of capacity to enjoy life and to function as a "whole man:" *$2,000,000.00*

207 W.Va. at 234–235 n. 7, 530 S.E.2d at 707–708 n. 7. In his cross-appeal, the defendant in *Gerver* contended that the jury's award of $2 million in "general damages" exceeded the $1 million cap on non-economic damages in W. Va.Code § 55–7B–8 (1986), and asked this Court to reduce the general damages portion of the verdict to $1 million.

This Court found no merit to the defendant's alleged error in *Gerver* and explained:

> This Court has held on several occasions that when a litigant seeks to make procedural distinctions between "special" damages and "general" damages, that litigant bears the burden of insuring that the circuit court distinguishes between types of damages in the jury's verdict form. *See, e.g., Grove By and Through Grove v. Myers,* 181 W.Va. 342, 382 S.E.2d 536 (1989). In Syllabus Point 7 of *Miller v. Monongahela Power Co.,* 184 W.Va. 663, 403 S.E.2d 406 (1991), we made clear that "when the defendant fails to submit a special jury interrogatory asking the jury to set forth special or liquidated damages, this Court's attention to such errors is entirely a matter of grace[.]"

207 W.Va. at 235, 530 S.E.2d at 708. Accordingly, this Court indicated that "[a]s there is no means to determine whether the non-economic damages assessed by the jury exceeded the $1,000,000 statutory limit, this Court will not presume that error occurred." *Id.*

▮ We find that *Gerver* does not apply to the instant case. In this case, unlike in *Gerver,* there was no evidence presented of economic damages suffered as a result of Dr. Murthy's negligence.[4] Second, the appellee did not propose any jury instructions on economic damages. In fact, the subject of economic damages was not mentioned at all in the discussion by the parties and the court on jury instructions. Further, the appellee's counsel did not argue for a finding of economic damages during his closing argument. Finally, the verdict form does not clearly provide for a finding of economic damages. Rather, the form simply provides for an amount of damages upon a finding of "Past and future sorrow, mental anguish and solace, loss of companionship, comfort and guidance, and loss of services, protection, care and assistance suffered by [each one of Mrs. Karpacs' children]."

The circuit court, in its order denying relief to Dr. Murthy on this issue, characterized the phrase in the verdict form, "loss of services, protection, care and assistance" as clearly indicating economic damages under our law. However, in light of the absence of evidence of economic damages, the fact that such damages were not clearly addressed in the jury instructions, and the fact that economic damages were not argued to the jury, it cannot be concluded that Dr. Murthy was fairly put on notice that the phrase "loss of services, protection, care and assistance" permitted the jury to find that there were economic damages.

In *Miller v. Monongahela Power Co.,* 184 W.Va. 663, 403 S.E.2d 406 (1991), *overruled on other grounds by Mallet v. Pickens,* 206 W.Va. 145, 522 S.E.2d 436 (1999), this Court discussed the issue of the calculation of prejudgment interest in the context of our decision in *Grove By and Through Grove v. Myers, supra.* In *Grove,* this Court indicated that the defendant has the burden of submitting a special interrogatory to the jury for the designation of the amount of special or liquidated damages for the purpose of calculating prejudgment interest, otherwise the plaintiff is entitled to prejudgment interest on the entire amount of a general verdict. In *Miller,* we cautioned that our statement in *Grove* needed to be clarified, and we proceeded to explain that

> We did not intend with our statement in *Grove* to create a trap for the unwary

---

4. The closest thing to evidence of economic damages in the record is the appellee's statement, in response to the question how her mother's death affected her father, that she had a room added onto her house so her father could move in with her and her family after her mother's death. According to the appellee, her father became lonely and depressed after her mother's death.

defendant and a jackpot for the silent plaintiff. Our job is not to bail careless defense counsel out of problems of their own making, but neither is it to provide a windfall for plaintiffs who sit by and allow the matter of damages and prejudgment interest to become hopelessly confused. Consequently, we would clarify the *Grove* rule here by adding that when the lawyers and the trial court can sort out the parts of a judgment on which interest should be added, even without the special interrogatories, the trial court should do so.

*Miller,* 184 W.Va. at 673, 403 S.E.2d at 416.

Our reasoning in *Miller* applies to the present case. In light of the fact that the appellee did not present her case below as one including economic damages, she did not proffer jury instructions on economic damages, and such damages were not included in the closing argument to the jury, it was reasonable for Dr. Murthy to not ask for a verdict form or an interrogatory separating economic from non-economic damages. As a result, Dr. Murthy should not be penalized in light of the reasonableness of her action in this regard. Therefore, this Court finds that *Gerver* does not apply to prevent this Court from reviewing the sufficiency of the evidence to support a verdict of economic damages in this case.

The circuit court concluded that sufficient evidence of economic loss was adduced below based on the following findings:

Services of a parent at issue in this case included (grand)child care, the loss of which is generally regarded as an economic loss, as well as certain household tasks like the cooking of holiday meals that also fall into that category. Of course the concepts of "assistance and care" are also partly economic in nature and embrace all of the sometimes prosaic, but highly valuable tasks performed by a modern grandmother, including, for example, serving and assisting her daughters at the births of grandchildren and in the early infancy of grandchildren when a grandmother is leaned on more heavily than any employee could be. Andrea Karpacs Brown testified about the importance of having the assistance of her mother at the birth of her eldest daughter, Alexandria, born before June 2001, and the loss of those services for her afterborn sons, Nicholas and Zachary and daughter, Adrianna. The jury would be justified in awarding amounts for the economic value of Mrs. Karpacs' lost services whether or not Mrs. Karpacs would have charged for them because the purpose of the Wrongful Death Act is to compensate the decedent's beneficiaries as fully as possible. (Footnotes omitted).

 This Court's review of the record indicates that the circuit court's finding of sufficient evidence to support the award of economic damages is error. We find no evidence in the record that Mrs. Karpacs assisted in caring for her grandchildren, cooked holiday meals, or otherwise aided or advised her children. While the appellee indicates that her mother was present for the birth of her daughter Alexandria, she does not indicate that Mrs. Karpacs assisted the birth in any way. Having found insufficient evidence to support an award of economic damages, we are compelled to conclude that the entire amount awarded by the jury to the appellee is for non-economic loss. The maximum recoverable amount for all non-economic loss under the version of W. Va.Code § 55–7B–8 in effect at the time the underlying claim was brought was $1 million. This Court held in Syllabus Point 6 of *Robinson v. Charleston Area Med. Center,* 186 W.Va. 720, 414 S.E.2d 877 (1991), that

*W. Va.Code,* 55–7B–8, as amended, which provides that "the maximum amount recoverable as damages for noneconomic loss" in a medical professional liability action "against a health care provider" is $1,000,000, applies as one overall limit to the aggregated claims of all plaintiffs against a health care provider, rather than applying to each plaintiff separately.

Applying this rule to the instant facts, we find that the maximum amount recoverable in this case is $1 million. Therefore, we conclude that the circuit court erred in denying Dr. Murthy's motion to reduce the verdict accordingly.

 The fourth alleged error raised by Dr. Murthy is the circuit court's award of prejudgment interest. Our decision above

that the appellee failed to present evidence of economic loss is dispositive of this issue. This Court held in Syllabus Point 3 of *Capper v. Gates*, 193 W.Va. 9, 454 S.E.2d 54 (1994), that "[i]n contract or tort actions, prejudgment interest is available to a litigant as part of compensatory damages if there is an ascertainable pecuniary loss." Because there is no ascertainable pecuniary loss in the instant case, prejudgment interest is not available. Accordingly, we conclude that the circuit court erred in awarding prejudgment interest to the appellee.

 The last assignment of error raised by Dr. Murthy is that the circuit court improperly awarded attorney fees and costs to the appellee. In an order entered by the circuit court on July 29, 2008, the court awarded attorney fees and costs to the appellee based on findings that Dr. Murthy and/or her insurer acted vexatiously or in bad faith.[5] The first basis for this award was the vexatious settlement strategy of Dr. Murthy's malpractice insurer, Woodbrook. Second, the circuit court found that an expert witness designated by Dr. Murthy, Dr. Roger Abrahams, was not prepared and could not offer fully formed opinions when deposed by the appellee. Third, the court found that Dr. Murthy altered her deposition testimony by testifying for the first time at trial that Mrs. Karpacs had expressed to her an extreme fear of the prospect of surgery. In its order awarding attorney fees and costs, the circuit court did not award a sum certain, but rather directed the appellee to tender to the appellant a calculation of all attorney fees, expenses, and costs within thirty days. If the parties were unable to agree on the proper amount recoverable, the appellee was instructed to contact the circuit court for a hearing on the matter.[6] Finally, the court indicated that it was granting fees and costs according to its inherent power to do so as well as pursuant to West Virginia Rules of Civil Procedure 26(e) and 37.[7]

On appeal, Dr. Murthy argues that the circuit court erred in several ways in awarding fees and costs. First, says Dr. Murthy, the court erred in awarding costs and fees against her based on the actions of her insurer. Second, while Dr. Murthy does not concede error with regard to the matter of Dr. Abrahams, she asserts that the proper course would have been to award reasonable fees incurred in connection with the events

**5.** In Syllabus Point 3 of *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986), this Court held:

> There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as "costs," without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.

**6.** In her brief, the appellee asserts that the circuit court's order awarding fees and costs is not a final, appealable order because no amount has yet been assessed. However, this Court recently held in Syllabus Point 3 of *C & O Motors, Inc. v. West Virginia Paving*, 223 W.Va. 469, 677 S.E.2d 905 (2009):

> An order determining liability, without a determination of damages, is a partial adjudication of a claim and is generally not immediately appealable. However, an immediate appeal from a liability judgment will be allowed if the determination of damages can be characterized as ministerial. That is, a judgment that does not determine damages is a final appealable order when the computation of damages is mechanical and unlikely to produce a second appeal because the only remaining task is ministerial, similar to assessing costs.

In the instant case, because all of the appellee's attorney fees, expenses, and costs were awarded, the only remaining task is ministerial, i.e., the calculation of these sums, which is unlikely to produce a second appeal. Therefore, we find that the order awarding fees and costs is appealable.

**7.** Rule of Civil Procedure 26(e) relates to the duty to supplement discovery responses in certain specified circumstances and provides that "[i]f supplementation is not made as required by this Rule, the court, upon motion or upon its own initiative, may impose upon the person who failed to make the supplementation an appropriate sanction as provided for under Rule 37."

The subject of Rule 37 is the failure to cooperate in discovery and the available sanctions for such failure. In addition to the several sanctions set forth in the rule, the rule also provides at (b)(2)(E), in part, that

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

surrounding Dr. Abrahams' deposition, not to award fees and costs for the entire litigation. Finally, Dr. Murthy contends that her single episode of impeached trial testimony in this case does not serve as the basis for the award of fees and costs for the entire trial.

The appellee responds that the circuit court properly awarded fees and costs because the appellant violated trial court orders; repeatedly failed to appear at scheduled hearings; filed misleading pleadings with the court; attempted to present an expert under a false premise; presented inherently incredible testimony at trial; and behaved vexatiously and oppressively, wasting the time of the Court and the appellee in litigation that lasted for five years.

 As a preliminary matter, we note that our review of the circuit court's decision to award attorney fees and costs is for an abuse of discretion. This Court has held:

> The imposition of sanctions by a circuit court under *W. Va. R. Civ. P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Syllabus Point 1, *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127 (1985). Concerning factors to be considered by a court in awarding fees and costs, this Court held in Syllabus Point 2 of *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996):

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

 This Court finds that there are several problems with the circuit court's order awarding attorney fees. First, we are unable to properly review whether the award of fees and costs herein was an abuse of discretion. While the record indicates that a hearing was held in which the parties argued post-trial motions including the motion for fees and costs, evidence was not taken at this hearing. In the absence of an evidentiary hearing, this Court is unable to undertake a meaningful review of the court's factual findings on which it based its ruling. We are also unable to determine whether the award of all fees and costs is necessary to compensate the appellee for actual harm suffered as a result of Dr. Murthy's and/or her insurer's alleged misconduct.

 Further, in finding misconduct on the part of Dr. Murthy and/or her insurer, the court indicated that the insurer has shown a pattern of engaging in vexatious settlement strategy in other cases before the circuit court and in other states. The court also found that Dr. Murthy engaged in similar misconduct in a previous medical malpractice case before the Wetzel County Circuit Court. It is improper, however, to impose sanctions on a party for general misconduct which is unrelated to any identifiable harm suffered by the other party in the case. This Court has held:

> Although Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

Syllabus Point 1, *Bartles v. Hinkle, supra.* Under our law, awards of fees and costs against a party should be designed to pay the reasonable expenses caused by the party's

failure to cooperate in discovery. Accordingly, we remand this matter to the circuit court for proceedings consistent with this opinion.

Finally, in her brief to this Court, the appellee raises a cross-assignment of error which is that the circuit court erred in precluding the jury from considering the issue of punitive damages. As evidence to support punitive damages, the appellee points to the testimony of her medical expert that Dr. Murthy's failure to adequately rehydrate Mrs. Karpacs, aggressively administer antibiotics, and operate on an emergency basis was "egregiously bad." According to the appellee, the evidence indicates that Dr. Murthy acted with reckless indifference to her patient's safety and, as a result, the issue of punitive damages should have gone to the jury.

 This Court finds no error in the circuit court's refusal to give an instruction permitting an award of punitive damages. Under our law, "[p]unitive damage instructions are legitimate only where there is evidence that a defendant acted with wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others to appear or where the legislature so authorizes." Syllabus Point 7, *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994). In the instant case, Dr. Murthy presented a medical expert who testified that Dr. Murthy did not commit medical malpractice. Dr. Murthy further testified to the reasons for her method of treating Mrs. Karpacs. We simply do not find sufficient evidence in the record to support an instruction on punitive damages. For this reason, we conclude that the circuit court did not err in refusing to give an instruction on punitive damages.

In sum, we affirm the circuit court's ruling precluding the admission of evidence on the DNR order signed by Mrs. Karpac's children. We further affirm the circuit court's finding of sufficient evidence to sustain an award of damages based on Mrs. Karpac's pain and suffering. However, we reverse the

circuit court's denial of Dr. Murthy's motion to reduce the $4 million jury award to conform to the $1 million limit on non-economic damages in the 1986 version of W. Va.Code § 55–7B–8, as well as the circuit court's award of prejudgment interest. In addition, we reverse the circuit court's order awarding attorney fees and costs to the appellee. Finally, we affirm the circuit court's refusal to instruct the jury on punitive damages.

### III.

### CONCLUSION

For the reasons stated above, we affirm in part and reverse in part the July 29, 2009, order of the Circuit Court of Wetzel County that denied Dr. Murthy's motion to alter or amend the verdict and entered judgment on the jury verdict of $ 4 million plus interest. We reverse the July 29, 2009, order of the circuit court that granted attorney fees and costs to the appellee. Finally, we remand this case to the circuit court for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Justice WORKMAN dissents and reserves the right to file a dissenting opinion.

WORKMAN, Justice, dissenting:
(Filed Nov. 24, 2009)

There is an old superstition among lawyers that when it comes to jury damage awards, the more lines for a jury to fill in, the greater the damages might be. In the present case, the Appellant made no effort to separate economic and non-economic damages on the jury verdict form in what may have been a strategic gamble made in hopes that the jury would return a lower monetary award. The jury award—which the Appellant argues is too high—makes no distinction between economic and non-economic damages. Non-economic damages are capped at $1 million.[1] Because the jury combined economic and non-economic damages, this Court has no

---

1. Because the Appellee commenced her action prior to July 1, 2003, the date the 2003 amendments to West Virginia Code § 55–7B–8 went into effect, the $ 1 million limit on non-economic damages applies to her case. Under the 2003 version of the statute, the maximum amount recoverable as compensatory damages for non-economic loss is $500,000 where the damages for non-economic loss suffered by the plaintiff are for wrongful death.

way to determine if the jury exceeded the non-economic damages cap.

Unhappy with the jury verdict, the Appellant asks this Court to find that none of the damages found by the jury were for economic loss. Yet it is not our proper role to attempt to discern the thinking of the jury, especially where the Appellant made no effort to distinguish the non-economic and economic damages on the actual jury verdict form. The Appellant's failure to have the jury distinguish damages has left the Court with a Gordian knot. It is neither appropriate, nor in this Court's best interests to attempt to untie it. Three million dollars for economic loss seems high where the evidence of such loss was not very strong. However, I cannot agree with the Majority that there was no evidence of economic loss.

### I. The Jury Considered Economic Issues at Trial

Within the provisions of the Medical Professional Liability Act, West Virginia Code § 55–7B–1 to –12 (2008), " 'noneconomic loss' is defined as losses, including, but not limited to, pain, suffering, mental anguish and grief." W. Va.Code § 55–7B–2 (k). Thus, by definition, if the damages sought do not fall into the statutory definition of "noneconomic loss," those damages necessarily are more accurately characterized as economic damages. Consequently, the damages sought by the Appellee for the loss of services and any actual expenses incurred from such loss are economic damages. As the Circuit Court noted in its order on July 26, 2008, Mrs. Karpacs' children testified about the loss of her "services, support and guidance" which include "the loss of her love and advice, the comfort of her presence and her services to her children and grandchildren, including child care and meal preparation." The family testified about the "loss of company of Elizabeth Karpacs, as well as the services she would have provided to her children and her husband while he lived and her support and guidance." I would affirm the circuit court decision that the verdict form's language of "loss of services, protection, care and assistance" encompassed economic damages under our law.

Moreover, the Appellee testified that her mother's death required her to build a home addition to house her father. It seems that construction costs for a home addition would unquestionably be economic rather emotional damages under the law.

### II. The Litigant Bears the Burden of Distinguishing Between Different Types of Damages on a Jury Verdict Form

Even more important, this Court has consistently held that it is the defendant's job to request a jury verdict form which specifies the elements of damages. In *Gerver v. Benavides*, 207 W.Va. 228, 530 S.E.2d 701 (1999), this Court addressed the situation where a litigant has failed to distinguish between economic and non-economic damages. Specifically, the Court states that it "has held on several occasions that when a litigant seeks to make procedural distinctions between 'special' damages and 'general' damages, that litigant bears the burden of insuring that the circuit court distinguishes between types of damages in the jury's verdict form." *Id.* at 235, 530 S.E.2d at 708. Much like this case, *Gerver* dealt with a medical malpractice suit where the damage form failed to distinguish economic and non-economic damages. The defendant argued that the damage award amount exceeded the statutory cap on non-economic damages. We noted:

> Both the jury instructions and the jury's verdict form merged "special," economic-type damages, such as lost future wages and employment benefits and future medical expenses, with "general," non-economic-type damages, such as past and future pain and suffering and loss of capacity to enjoy life. The defendant did not object to the circuit court's instructions or verdict form, and did not submit special interrogatories that would allow the jury to segregate "economic" from "non-economic" losses. As there is no means to determine whether the non-economic damages assessed by the jury exceeded the $1,000,000 statutory limit, this Court will not presume that error occurred.

207 W.Va. at 235, 530 S.E.2d at 708.

In the present case, the Appellee did not object to the verdict form and it is impossible

for this Court now to determine what part of the award is economic in nature and what part is non-economic.

### III. Remittitur of the Jury Award

The Majority attempts to distinguish *Gerver* by arguing that no evidence of economic damages was presented at this trial. I disagree with the Majority's decision that the Appellant did not show economic damages. It does appear, however, the award for economic damages may be excessive. Consequently, I would have favored a remittitur[2] of the award to better comport with the economic damages presented at trial and the statutory cap on noneconomic damages. This Court held in syllabus point six of *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 494, 345 S.E.2d 791, 793 (1986), that "[e]ven when there are no data by which the amount of excess in a jury's verdict is defi-nitely ascertainable, entry of remittitur is permissible." Unlike what transpired in *Roberts* with this Court determining the amount of the remittitur, I would remand this case to the circuit court which, having heard the live testimony, is in a better position to determine if the jury award is appropriate.

As a result, I must dissent from the portion of the Majority's decision finding no economic damages and directing the circuit court to limit the award to the $1 million noneconomic damages cap.

---

2. The Appellant did not specifically move for remittitur below; however, the Appellant did file various post-trial motions including a motion to alter or amend the jury verdict. According to the Court in *Alkire v. First National Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996), "[t]he motion for a remittitur is technically a motion to alter or amend judgment pursuant to W. Va. R. Civ. P. 59(e)." *Id.* at 127, n. 6, 475 S.E.2d at 127 n. 6.