IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 27, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CITY OF PARKERSBURG,**
**Defendant Below, Petitioner**

**vs.) No. 22-ICA-142**      (Cir. Ct. Wood Cnty. No. CC-54-2018-C-259)

**WAYNE WHITE, MICHAEL WOOD,**
**JOSHUA GANDEE and all others similarly**
**Situated and INTERNATIONAL ASSOCIATION**
**OF FIRE FIGHTERS LOCAL 91,**
**Plaintiffs Below, Respondents**

**MEMORANDUM DECISION**

Petitioner City of Parkersburg appeals the "Final Order from May 5[th] Hearing Regarding Enforcement of the Court's October 22[nd], 2021 Order" entered on August 31, 2022, by the Circuit Court of Wood County. Respondents, Wayne White, Michael Wood, Joshua Gandee, and all others similarly situated and International Association of Fire Fighters Local 91 timely filed a response in support of the circuit court's order.[1] The City of Parkersburg filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision but no substantial question of law. Therefore, a memorandum decision reversing the circuit court's order is appropriate under the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure.

This case arises from a wage dispute initiated by the respondent firefighters against the City of Parkersburg for alleged violations of the West Virginia Wage Payment and Collection Act ("WPCA").

In 2008, the City of Parkersburg established a new longevity increment to its hourly rate of pay for fire civil service employees. The City of Parkersburg had enacted several longevity pay ordinances prior to 2008, with each new ordinance prospectively increasing

---

[1] Petitioner is represented by Johnnie E. Brown, Esq., and Donovan M. Powell, Esq. Respondents are represented by Walt Auvil, Esq., Kirk Auvil, Esq., and Anthony Brunicardi, Esq.

longevity pay for each year worked thereafter.[2] The 2008 longevity pay plan provided that, effective July 1, 2008, appointed part-time employees would receive longevity pay of $624.00 per year for each year of city service, while fire civil service employees working a 40-hour work week would receive longevity pay of $.30 per hour for each year of city service, those working a 48-hour work week would receive longevity pay of $.25 per hour for each year of city service, and those working a 54-hour work week would receive $.2222 per hour for each year of city service, payable on their work anniversary. This longevity pay was also to be included in each fire civil service employee's base pay for the purposes of overtime. The City of Parkersburg asserts that this payment scheme was meant to result in each firefighter receiving the same amount of compensation per longevity year regardless of their number of scheduled hours, so that a person working a 40-hour work week would be eligible for $624.00 multiplied by the number of years worked, just as a person working a 48-hour work week would be eligible for $624.00 multiplied by the number of years worked, just as a person working a 54-hour work week would be eligible for $624.00 multiplied by the number of years worked. The 2008 ordinance specifically stated that it was not retroactive.

In 2008, the Parkersburg City Council also implemented a benefit for members of the City Fire Department who attained the designation of Firefighter/EMT and maintained certification as an Emergency Medical Technician. That ordinance mandated an increase in pay of $.42 per hour for all such 48-hour workweek personnel and $.50 per hour for all such day shift personnel, effective July 1, 2008. At that time, all affected City of Parkersburg firefighters were working a 48-hour workweek, and the benefit was approximately $1,040.00 per year to those who maintained their EMT certification. The ordinance did not contain a specific pay rate for 54-hour workweek personnel.

The fire civil service employees continued to accrue and receive longevity payments for each new year until July 1, 2011, when the Parkersburg City Council passed "An Ordinance Suspending the Operation of the Longevity Plan," which halted any additional years worked after 2011 from being paid under the 2008 ordinance. However, eligible employees continued to be paid the longevity benefit for each year worked according to the prior applicable ordinances. For example, the years between July 1, 2008, and July 1, 2011, were paid according to the rates established in the 2008 ordinance, and the years prior to 2008 were paid according to their respective ordinances.

---

[2] City of Parkersburg Finance Director Eric Jiles testified that for the years 1994 through 1996, the annual longevity increment was $250.00 per year of service. For the years 1997 through 2001, the longevity increment was described as "twenty ($.20) cents per hour ($416.00 per year) for each year" of service. In 2002 through 2007, the longevity increment was $416.00 per year of service for appointed part-time employees, $.20 per hour for each year of service for 40-hour employees, and $.17 per hour for each year of service for 48-hour employees.

The Parkersburg City Council later adopted "An Ordinance Amending and Reenacting the Compensation Plan and Section IX, Benefits, of the City of Parkersburg Policies and Procedures," on November 8, 2011, that changed the number of hours worked each week by the fire civil service employees. It changed the work week from 48 hours to 54 hours per week for all firefighters and amended and reenacted the employment policies, procedures, and compensation plan for longevity, overtime, and compensatory time accordingly.

After the firefighters became 54-hour employees in November 2011 until March 2017, the City of Parkersburg continued to calculate and pay the longevity pay and the EMT certification benefits according to the 48-hour schedule, rather than recalculating and applying the rate set for the 54-hour workweek schedule. This meant that the respondents received the $.25 longevity pay rate in the 2008 ordinance rather than the $.2222 rate for longevity pay, which the City of Parkersburg maintains was a substantial overpayment. Similarly, those who earned the EMT pay received it under the 48-hour rate proscribed by the EMT ordinance, rather than a lower prorated rate that would amount to the same yearly total of $1,040.00, which the City of Parkersburg claims was intended by the ordinance.

The City of Parkersburg continued to make these payments until 2017 when Respondent Wayne White was transitioning from a Lieutenant position to a Chief Fire Inspector position within the fire department which involved a change in pay rates. The City of Parkersburg claims that it noticed the alleged overpayments to the respondents during this record-keeping transition. Consequently, the City of Parkersburg attempted to correct what it believed were overpayments in violation of the annual amounts approved by the City Council in the respective ordinances. Notably, it did not ask the employees to pay back what it believed were overpayments, but on or about August 1, 2017, the City of Parkersburg began paying the Respondents the longevity rate of $.2222 per hour for longevity pay based on the 54-hour work week for the service years from 2008 to 2011. Similarly, it prorated the EMT benefit from $.42 per hour to $.37 per hour, to reach the same approximate yearly amount of $1,040.00 for each qualifying firefighter/EMT, although the EMT ordinance did not specifically list a rate for 54-hour weekly workers.

Less than a year after the new payments took effect, the named respondents and their fraternal group, International Association of Fire Fighters ("IAFF") Local 91,[3] filed suit in the Circuit Court of Wood County.[4] The Amended Complaint alleged that the City of Parkersburg incorrectly altered its longevity pay plan terms and conditions for which the plaintiffs received compensation until March 2017. The Amended Complaint also

[3] Respondent IAFF Local 91 is a fraternal organization that represents the firefighters, which the circuit court ruled has representative standing in the suit below.

[4] Prior to this legal action, Respondent White filed a grievance related to the pay reduction with the Fire Civil Service Commission of the City of Parkersburg.

3

alleged that the City of Parkersburg incorrectly applied its EMT certification pay ordinance and failed to place its pay practices in writing and make them available to the plaintiffs in violation of the WPCA.

On October 22, 2021, after cross-motions for summary judgment, the circuit court entered an Amended Order granting the respondents' motion for summary judgment as to liability, finding that the City of Parkersburg's actions in reducing the respondents' pay violated the WPCA. Specifically, the order provided that, "[p]laintiffs should have received $0.25 per hour from 2017 to present for their accrued longevity pay" and "…. $0.42 per hour for the EMT certification pay from 2017 to present."

Upon entry of the Amended Order, the City of Parkersburg presented to respondents a spreadsheet that it claims reflects the recalculated back pay awards as it understood were directed by the court, as applied to the years of service between July 1, 2008, and July 1, 2011. The respondents took the position that the spreadsheet did not fully restore the pay reductions implemented in 2017. The respondents argued that the circuit court's order found that all prorated longevity years and ordinances prior to 2008 were also unlawfully corrected and that the order was not limited to the years between July 1, 2008, and July 1, 2011. The parties thereafter submitted motions to clarify the enforcement of the Amended Order. The City of Parkersburg argued that the Amended Order should be enforced as it was written, granting the relief requested in the Amended Complaint and in the respondents' motion for summary judgment, which it stated was limited to the longevity accrual rate between 2008 and 2011 and the reduction of EMT pay. The respondents argued that the Amended Order should be expanded to include all longevity pay ordinances prorated in 2017 to reflect 54-hour shifts, including all longevity years prior to 2008 which are paid at various other rates according to the other prior ordinances.

The parties argued these positions at a subsequent hearing and submitted additional briefing on the issue. The City of Parkersburg argued that the respondents were seeking recovery for back pay for time periods that were not raised in their Amended Complaint or dictated by the 2008 ordinances at issue. The City of Parkersburg further stated that the Amended Order did not contain the necessary facts needed to compute the damages that it said the respondents were belatedly seeking because there was no evidence or factual predicate regarding the lawfulness of prorating for years accrued prior to 2008. Respondents, in contrast, argued that the City of Parkersburg was inappropriately and belatedly attempting to inject the prior ordinances' pay rates into the litigation when it had not raised these ordinances as a defense in its answer to the complaint, had not produced the ordinances in discovery, or testified that it relied on the ordinances in its 2017 recalculation of longevity rate increment pay.

Following the hearing, the circuit court entered its "Final Order from May 5[th] Hearing Regarding Enforcement of the Court's October 22[nd], 2021 Order" on August 31, 2022, which expanded the scope of back pay due to plaintiffs to all prior longevity

ordinances, not just the 2008 ordinance. On September 28, 2022, the circuit court entered an "Agreed Order Staying the August 31st Order and Declaring the August 31st Order a Final Appealable Order as to Liability" that ratified the parties' agreement to stay the enforcement of the August 31st order and its prospective pay changes, and affirmed that although final damages were not calculated, the August 31st order was declared a final appealable order as to liability.[5] The City of Parkersburg now appeals the Final Order entered August 31, 2022.

In its appeal, the City of Parkersburg raises assignments of error that challenge the circuit court's substantive rulings in the October 22, 2021, order, which was not appealed, in addition to the clarifying rulings in the August 31, 2022, order. Although the circuit court did not certify the October 22, 2021, order as a final appealable order, we do not find

---

[5] We note that, ordinarily, an order determining liability without a determination of damages is not a final adjudication of a claim and is not immediately appealable.

> However, an immediate appeal from a liability judgment will be allowed if the determination of damages can be characterized as ministerial. That is, a judgment that does not determine damages is a final appealable order when the computation of damages is mechanical and unlikely to produce a second appeal because the only remaining task is ministerial, similar to assessing costs.

Syl. Pt. 3, in part, *C & O Motors, Inc. v. W. Va. Paving, Inc.*, 223 W. Va. 469, 677 S.E.2d 905 (2009). Our Supreme Court has found the ministerial exception to finality to be satisfied where the amount of damages was already ascertained or readily ascertainable. *See, e.g., Marcus v. Staubs*, 230 W. Va. 127, 142, 736 S.E.2d 360, 375 (2012) (finding damages issue ministerial where amount had been fixed by agreement of the parties upon a finding of liability); *Karpacs-Brown v. Murthy*, 224 W. Va. 516, 525, n. 6, 686 S.E.2d 746, 755, n. 6 (2009) ("In the instant case, because all of the appellee's attorney fees, expenses, and costs were awarded, the only remaining task is ministerial, i.e., the calculation of these sums, which is unlikely to produce a second appeal.").

In the case below, the circuit court determined liability and the method of calculating damages before entering the Agreed Order Declaring the August 31st Order a Final Appealable Order as to Liability, thus demonstrating that it considered the computation of damages to be ministerial. The circuit court further heard discussion of counsel and their agreement to appeal liability prior to calculating damages on the basis that "a calculation of damages would be an ineffective use of the parties' monies in light of an appeal as damages would have to be recalculated after appeal regardless of any appeal's outcome" prior to declaring the order a final appealable order. We defer to the circuit court's analysis and determination on that issue.

that the City of Parkersburg exceeded the scope of this appeal by challenging the circuit court's rulings from the October 22, 2021, order. Our Supreme Court of Appeals has held that:

> [w]here an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding non-appealable decrees or orders, from which have arisen any of the errors complained of in the decree appealed from, no matter how long they may have been rendered before the appeal was taken.

Syl. Pt. 6, *Riffe v. Armstrong*, 197 W. Va. 626, 631, 477 S.E.2d 535, 540 (1996), holding modified by *Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999) (internal citations omitted).

As is well-established, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover, "''"[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992)." *Id.* at 190, 451 S.E.2d at 756, syl. pt 2. "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 3.

Accordingly, we turn to the City of Parkersburg's assignments of error raised in the instant appeal. Namely, the City of Parkersburg alleges that the circuit court erred in finding that the City of Parkersburg's 2017 corrective and prospective action was not the legal and correct application of the 2008 longevity ordinance.

The City of Parkersburg argues that the 2008 longevity ordinance unambiguously states different pay rates for 48-hour and 54-hour employees and that once the fire civil service employees changed to 54-hour per week shifts on November 8, 2011, they should have been paid at the 54-hour rate of $.2222 per hour for each year of service. The City of Parkersburg further claims that its failure to make that change in the affected employees' pay rates in 2011 was an error that resulted in an overpayment, and its effort to rectify that error in 2017 was simply the correct and required application of the 2008 ordinance, not a change in pay rates that would trigger the application of the WCPA's notice requirements.[6]

---

[6] West Virginia Code § 21-5-9 (1975) requires an employer to notify an employee of the rate of pay and any changes to that rate:

The respondents argue, and the circuit court agreed, that this change in 2017 was in violation of nine years of pay practices which created a vested interest in being paid the higher amount of longevity pay. We disagree. First, we do not find that the application of the 54-hour rate explicitly denoted in the 2008 longevity pay plan constitutes a change or reduction in wages such as that contemplated by the WCPA. Because the 54-hour rate was expressly provided for in the City of Parkersburg's Compensation Plan, the City of Parkersburg's application of that pay rate is not an affirmative change to the longevity pay plan.

Moreover, we find that the fact that the City of Parkersburg paid the 48-hour rate in error does not create a vested interest in such an overpayment to the respondents in perpetuity. We find nothing in the briefs or record below to support such a contention, nor do we find any such support in our jurisprudence. We note that our Supreme Court has held that "in the absence of a contractual obligation providing otherwise, a public employer is permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees and where the modification of policy does not retroactively impair previously earned and vested rights, such as pension benefits." *Boggess v. City of Charleston*, 234 W. Va. 366, 377, 765 S.E.2d 255, 266 (2014). Notably, respondents do not point to anything in our statutory or common law that would tend to define such vested rights as those fringe benefits erroneously paid in excess.[7] Moreover, we acknowledge, as the *Boggess* court found, that public employers must be permitted to exercise discretion in making changes in policies and procedures as mandated by the electorate and in order "to control its annual budgetary and discretionary functions[,]" which is contrasted by the "absence of an employee's right to the continued existence of a particular means or method of compensation." *Id*. at 375, 765 S.E.2d. at 264. Consequently, we find that the circuit court erred in granting summary judgment to respondents on liability on this issue and in denying petitioner's motion for summary judgment on this issue.

Every person, firm and corporation shall: (1) Notify his employees in writing, at the time of hiring of the rate of pay, and of the day, hour, and place of payment. (2) Notify his employees in writing, or through a posted notice maintained in a place accessible to his employees of any changes in the arrangements specified above prior to the time of such changes.

[7] In contrast, *Boggess* finds an important distinction between the retroactive impairment of previously earned and vested rights, such as pension benefits, which are a form of deferred compensation, and those actions that simply alter the terms of future employment. *Id*. at 376, 765 S.E.2d at 265. The former is generally disallowed, while the latter is permitted. *Id*.

With regard to the EMT pay, the City of Parkersburg argues that the ordinance did not contain a specific pay rate for 54-hour employees because when it was enacted, no eligible fire department employees worked more than a 48-hour work schedule. Regardless, the City of Parkersburg argues that its City Council's intent is clear that the annual benefit for those who maintain a Firefighter/EMT certification should be approximately $1,040.00, regardless of the hours worked per week, as evidenced by the enumerated pay rates for 48-hour and day shift (40-hour) personnel of $.42 and $.50, respectively. However, the pertinent language of the policy is devoid of any reference to the total benefit of $1,040.00. Although all the eligible personnel were arguably working more than 48 hours per week after November 1, 2011, without an enumerated 54-hour weekly rate in the policy, we disagree that the City of Parkersburg was merely correcting an error when it prorated the rate to $.37 rather than affirmatively changing the rate. While we do not dispute that the City of Parkersburg had the authority to prospectively alter the EMT rate of pay and arguably had a duty to correct an outdated pay rate, we are also mindful of the need for compliance with the notice requirements of the WPCA. Unfortunately, despite the parties' competing motions for summary judgment and years of protracted litigation, it is not clear from the appendix record whether the City of Parkersburg provided any written notice to the respondents before prorating the rate to $.37. Accordingly, we are unable to determine if the WPCA has been violated, and remand this issue to the circuit court to consider whether the City of Parkersburg provided prior notice to the respondents of the alteration in the rate in conformity with West Virginia Code § 21-5-9.

Finally, the City of Parkersburg argues that the circuit court erred in ruling that IAFF Local 91 has representative standing to bring respondents' claims under the WCPA. The City of Parkersburg alleges that the requirements of the WPCA render the IAFF Local 91 incapable of meeting the three-element test articulated in *Affiliated Construction Trades Foundation v. West Virginia Department of Transportation*, 227 W. Va. 653, 713 S.E.2d 809 (2011).

First, the City of Parkersburg suggests that the language of the WPCA itself limits recovery under the act specifically to claims brought by an affected individual. The WPCA defines "employee" as "any person suffered or permitted to work by a person, firm, or corporation, except those classified as an independent contractor . . ." W. Va. Code § 21-5-1(b) (2021). Remedies under the act are enumerated specifically for employees whose wages were not paid in accord with the act. W. Va. Code § 21-5-12 (1975).[8] The WPCA

_____

[8] West Virginia Code § 21-5-12 provides, in pertinent part:

itself is silent as to any causes of action brought by an organization with representative standing on behalf of its members.

The controlling test to determine "representational standing" is the three-element test in *Affiliated*. 227 W. Va. at 659, 713 S.E.2d at 815. There, our Supreme Court held that "an organization has representative standing to sue on behalf of its members when the organization proves that: (1) at least one of its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.*

The circuit court's Amended Order contains no findings of fact on this issue or any analysis or application of this three-element test. Instead, the order summarily concludes, "That under the test set forth in Affiliated Construction Trades Foundation v. W. Va. DOT, 227 W. Va. 651, 713 S.E.2d 809 (2011), the Plaintiff International Association of Fire Fighters Local 91 has standing to assert a claim in this matter."

Our analysis of this issue begins with an application of the *Affiliated* factors. The first prong is easily satisfied — the Amended Complaint identifies the named Respondents Wayne White, Michael Wood, and Joshua Gandee as Firefighter/EMTs and members of the IAFF Local 91, so these members had standing to sue individually. The second prong is not in dispute, as the IAFF Local 91 is a lobbying and advocacy group for firefighters and its interests are clearly aligned with those of the respondents. However, the third prong conflicts with the nature of the underlying claims. Although our inquiry is simplified by the elimination of the longevity pay issue, we observe that the claim for EMT pay is brought pursuant to the WPCA, which expressly limits its remedies to causes of action brought either by the affected employee(s) or the Commissioner of Labor/the commissioner's designee. Nothing in the language of the WPCA contemplates a cause of action brought by an organization with representative standing. Accordingly, it appears that the nature of the claim and the relief sought tends to require the participation of the individual members of the association.

---

(a) Any person whose wages have not been paid in accord with this article, or the commissioner [Commissioner of Labor] or his designated representative, upon the request of such person, may bring any legal action necessary to collect a claim under this article. With the consent of the employee, the commissioner shall have the power to settle and adjust any claim to the same extent as might the employee.

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. . . . The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. [The association] alleges no monetary injury to itself, nor any assignment of the damages claims of its members. . . [t]he damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of [the association] who claims injury as a result of respondents' practices [must] be a party to the suit, and [the association] has no standing to claim damages on his behalf.

*Warth v. Seldin*, 422 U.S. 490, 515-16 (1975). As in *Warth*, the association here has alleged representative standing for an unknown number of affected firefighter/EMTs. IAFF Local 91's claims are presumably not common to their entire membership, and the nature of any individual member's damages would require particularized proof. Thus, to obtain relief, each member of IAFF Local 91 who claims damages from the EMT pay issue must be a party to the suit and IAFF Local 91 has no standing to claim damages on their behalf.

Accordingly, we reverse the circuit court's October 22, 2021, Amended Order and its grant of Respondents' Motion for Summary Judgment As to Liability and denial of Petitioner's Motion for Summary Judgment, and we remand to the Circuit Court of Wood County for the entry of an order granting Petitioner's Motion for Summary Judgment, in part, and dismissing Count I of Respondents' First Amended Complaint and dismissing the claims of International Association of Fire Fighters Local 91 in their entirety, and for further proceedings consistent with this decision as to Count II of Respondents' First Amended Complaint.

Reversed and Remanded with Directions.

**ISSUED:** December 27, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr

Judge Charles O. Lorensen