permitting the citizens of Hardy County notice and opportunity to comment), the objectives of the Open Governmental Proceedings Act were inexorably corrupted.

If the Legislature wants emergency ambulance authorities to operate in such an unfettered and permissibly secretive manner, it need only amend EASA to "expressly and specifically" exempt it from the Open Governmental Proceedings Act. W.Va. Code § 6–9A–3(a). To the extent such an amendment fails to eventualize, it will conclusively demonstrate that the Legislature never intended that a county commission could use EASA to block the sunshine and impose significant financial burdens on a county's citizenry.

Accordingly, I respectfully concur, in part, and dissent, in part.

788 S.E.2d 18

**Anandhi MURTHY, M.D., and Woodbrook Casualty Insurance Company, Defendants Below, Petitioners**

**v.**

**Andrea KARPACS–BROWN, individually, and as Administratrix of the Estate of her Mother, Elizabeth Karpacs, and the Estate of her Father, Andrew Karpacs, Plaintiff Below, Respondent**

**No. 15–0376**

Supreme Court of Appeals of West Virginia.

Submitted: April 20, 2016

Filed: June 6, 2016

Stephen R. Brooks, Esq., Robert C. James, Esq., Flaherty Sensabaugh Bonasso PLLC, Wheeling, West Virginia, Counsel for Petitioner Anandhi Murthy, M.D.

Ancil G. Ramey, Esq., Steptoe & Johnson PLLC, Huntington, West Virginia, Counsel for Petitioner Woodbrook Casualty Insurance Company.

Christopher J. Regan, Esq., Geoffrey C. Brown, Esq., Bordas & Bordas, PLLC, Wheeling, West Virginia, Counsel for Respondent Andrea Karpacs–Brown.

Chief Justice Ketchum:

This appeal from the Circuit Court of Wetzel County originates from our opinion in *Karpacs–Brown v. Murthy*, 224 W.Va. 516, 686 S.E.2d 746 (2009) ("*Murthy I*"). In the underlying trial, the plaintiff, Andrea Karpacs–Brown ("Karpacs–Brown"), was awarded damages against the defendant, Anandhi Murthy, M.D. ("Dr. Murthy"), in a medical negligence action concerning the death of Elizabeth Karpacs (the "decedent"). Karpacs–Brown is the decedent's daughter and Administratrix of the decedent's Estate. Dr. Murthy's medical professional liability insurance carrier is Woodbrook Casualty Insurance Company ("Woodbrook").

In *Murthy* 1, this Court remanded the action for an evidentiary hearing regarding the circuit court's award of attorney fees and costs to the plaintiff, Karpacs–Brown. The remand hearing was conducted in February 2015 followed by the entry of an order on April 2, 2015, again awarding attorney fees and costs to Karpacs–Brown. Dr. Murthy and Woodbrook appeal from the April 2, 2015, order.

This Court is of the opinion that the award of attorney fees and costs to Karpacs–Brown constituted an abuse of discretion. We, therefore, reverse the April 2, 2015, order of the Circuit Court of Wetzel County and set aside Karpacs–Brown's award of attorney fees and costs, with prejudice.

## I. Factual and Procedural Background and *Murthy* 1

The facts of the decedent's illness and death are more fully set out in *Murthy I*. Briefly, on June 1, 2001, the decedent presented to the Wetzel County Hospital Emergency Room in New Martinsville and came under the care of Dr. Murthy, a surgeon. The decedent's symptoms included abdominal discomfort, nausea and vomiting. The following day, June 2, 2001, the decedent slipped into shock and died. The decedent was survived by her husband Andrew Karpacs and her three children. On May 23, 2003, Andrew Karpacs, the Administrator of the decedent's Estate, filed a medical negligence action in the Circuit Court of Wetzel County against Dr. Murthy. The complaint alleged that Dr. Murthy failed to perform exploratory surgery to identify, diagnose and correct the decedent's "intra-abdominal condition." Upon Andrew Karpacs's death, Karpacs–Brown was appointed Administratrix of both Estates.

The four-day trial began on January 22, 2008. Finding Dr. Murthy guilty of negligence, the jury returned a verdict of $4,000,000 in compensatory damages, which consisted of $1,000,000 for the decedent's pain and suffering and $1,000,000 for each of the three children for "past and future sorrow, mental anguish and solace, loss of companionship, comfort and guidance, and loss of services, protection, care and assistance."

After the trial, the circuit court allowed Karpacs–Brown to file an amended complaint which added Dr. Murthy's insurance carrier, Woodbrook, as a party defendant. Karpacs–Brown alleged in the amended complaint that Woodbrook made all relevant decisions for Dr. Murthy's defense but, in so doing, acted vexatiously and in bad faith to the detriment

of both Karpacs–Brown and Dr. Murthy.[1] Karpacs–Brown demanded that Woodbrook pay all attorney fees and costs she incurred in prosecuting the medical negligence action.

In conjunction with the amended complaint, Karpacs–Brown filed a motion which asserted that her attorney fees and costs should be paid by Dr. Murthy or Woodbrook based on their vexatious conduct and bad faith during the litigation. As she did in the amended complaint, Karpacs–Brown alleged in the motion that Woodbrook essentially controlled the defense and followed a past practice of refusing to negotiate in the face of meritorious cases.[2]

On July 29, 2008, the circuit court denied Dr. Murthy's post-trial motions. The circuit court entered a separate order on July 29, 2008, directing that Karpacs–Brown's attorney fees and costs would be paid by either Dr. Murthy or Woodbrook, the calculation of which amounts was to be submitted by Karpacs–Brown.

In granting attorney fees and costs, the circuit court confirmed Karpacs–Brown's assertion that Woodbrook failed to negotiate a settlement despite the parties' willingness to resolve the action. *See* n. 1. Moreover, the circuit court found that Dr. Murthy and Woodbrook failed to participate in a meaningful way in court-ordered mediation.

In addition, the circuit court found as follows with regard to Dr. Murthy's expert witness, Dr. Roger Abrahams: Dr. Abrahams had been intentionally under-prepared for his deposition, and his testimony was excluded upon a motion in limine without objection or a request to supplement his testimony by Dr. Murthy. Months later, Dr. Murthy filed a pre-trial motion to reconsider.

The circuit court denied the motion but permitted Dr. Murthy to submit a written proffer of Dr. Abraham's proposed testimony. In granting Karpacs–Brown attorney fees and costs, the circuit court concluded that Dr. Murthy abused that opportunity, since the proffer indicated that Dr. Abrahams would testify on a wide range of previously undisclosed subjects, "the majority of which flatly contradicted his prior deposition answers."

Finally, in granting attorney fees and costs, the circuit court noted that during discovery Dr. Murthy testified that she could not remember any specific conversations with any members of the Karpacs family on June 1 or June 2, 2001. Concluding that Dr. Murthy then made "material changes in testimony at trial following the plaintiff resting her case," the circuit court stated:

> When the case proceeded to trial, Dr. Murthy was asked on the witness stand why she never told [the decedent] that she was probably going to die without surgery and why she never told [the decedent] that she could have been transferred to another hospital for emergency rehydration and life-saving surgery. For the first time, Dr. Murthy testified that she did remember conversations with [the decedent] wherein [the decedent] expressed extreme fear at the prospect of surgery, telling Dr. Murthy, "Please don't tell me I need surgery."

On November 25, 2008, Woodbrook filed a motion to dismiss the amended complaint and all claims made by Karpacs–Brown against Woodbrook for attorney fees and costs. Woodbrook asserted that Karpacs–Brown's claims constituted third-party claims against an insurer of a health care provider which are barred under West Virginia law.

---

1. Among the instances of misconduct alleged against Woodbrook in the amended complaint is the following:

    Despite the willingness of [Karpacs–Brown] to resolve her claims made against Dr. Murthy within the medical professional liability policy's $1,000,000 limit and Dr. Murthy's express request for the action to be resolved within her policy limit, Woodbrook refused to make any effort to negotiate a settlement and secure a release for Dr. Murthy.

2. For example, Karpacs–Brown's motion for attorney fees and costs referenced *Sharon K. Rob-*

*erts, et al. v. Anandhi Murthy, M.D. and Woodbrook Casualty Ins., Inc.,* Civil Action No. 02–C–14 (Wetzel County), a medical malpractice action which resulted in a $5,764,214.75 verdict against Dr. Murthy in March 2007. According to Karpacs–Brown, Woodbrook "controlled the defense of *Roberts* entirely and made the decision to offer nothing over the objections and protests of Murthy." Dr. Murthy subsequently filed a bad faith action against Woodbrook arising out of Woodbrook's handling of the *Roberts* litigation. *See Murthy v. Woodbrook Casualty Ins. Co.,* Civil Action No. 07–C–37 (Wetzel County).

*See W.Va. Code,* 55–7B–5(b) [2001] (eliminating third-party bad faith claims against insurers of health care providers); *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 463 n. 6, 583 S.E.2d 80, 86, n. 6 (2003) (recognizing the elimination of such claims by the Legislature). The circuit court deferred Woodbrook's motion to dismiss pending Dr. Murthy's appeal to this Court of the underlying verdict.

In November 2008 Dr. Murthy filed a petition for appeal challenging the denial of her post-trial motions and the order which granted Karpacs–Brown attorney fees and costs. That appeal resulted in *Karpacs–Brown v. Murthy,* 224 W.Va. 516, 686 S.E.2d 746 (2009) ("*Murthy I*").

In *Murthy I*, this Court affirmed the circuit court's rulings regarding the evidence at trial. However, noting that no evidence on economic damages had been presented, we reduced the $4,000,000 judgment to conform to the statutory one million dollar limit on noneconomic damages. *W.Va. Code,* 55–7B–8 [1986], then in effect, stated: "In any medical professional liability action brought against a health care provider, the maximum amount recoverable as damages for noneconomic loss shall not exceed one million dollars and the jury may be so instructed." *See* syl. pt. 6, *Robinson v. Charleston Area Medical Center, Inc.,* 186 W.Va. 720, 414 S.E.2d 877 (1991) (The one million dollar cap "applies as one overall limit to the aggregated claims of all plaintiffs against a health care provider, rather than applying to each plaintiff separately.").[3]

Finally, in *Murthy I*, this Court reversed the July 29, 2008, order which awarded Karpacs–Brown attorney fees and costs and remanded the action for further proceedings on that issue. We pointed out that, in the absence of an evidentiary hearing, we were unable to properly review whether the award of attorney fees and costs constituted an abuse of discretion. Moreover, this Court observed that

> in finding misconduct on the part of Dr. Murthy and/or her insurer, the court indicated that the insurer has shown a pattern of engaging in vexatious settlement strategy in other cases before the circuit court and in other states. The court also found that Dr. Murthy engaged in similar misconduct in a previous medical malpractice case before the Wetzel County Circuit Court. *It is improper, however, to impose sanctions on a party for general misconduct which is unrelated to any identifiable harm suffered by the other party in the case.*
>
> * * *
>
> Under our law, awards of fees and costs against a party should be designed to pay the reasonable expenses caused by the party's failure to cooperate in discovery.

(emphasis added) 224 W.Va. at 526–27, 686 S.E.2d at 756–57.

## II. The Current Appeal

Soon after *Murthy I*, Dr. Murthy paid Karpacs–Brown the reduced judgment, plus interest, in the total amount of $1,162,741.60. Later, in March 2010, Dr. Murthy filed various motions in limine to preclude certain matters from consideration on the issue of attorney fees and costs. One of the motions sought to preclude Karpacs–Brown from offering any testimony, evidence or argument regarding an unrelated Wetzel County action styled *Sharon K. Roberts, et al. v. Anandhi Murthy, M.D. and Woodbrook Casualty Ins., Inc.,* a medical malpractice action which resulted in a $5,764,214.75 verdict against Dr. Murthy in March 2007. *See* n. 2, *supra.* Emphasizing that neither Karpacs–Brown nor her family were parties to the *Roberts* action, Dr. Murthy asserted that any reference to the *Roberts* litigation would be irrelevant. Dr. Murthy further asserted that any reference to *Roberts* would violate the discussion in *Murthy I* which stated that sanctions for general misconduct unrelated to the harm suffered by a party is improper.

In April 2010, plaintiff Karpacs–Brown renewed her motion for attorney fees and costs. However, on May 31, 2013, her previously filed amended complaint seeking attorney fees and costs from Woodbrook was dis-

---

**3.** *W.Va. Code,* 55–7B–8 [1986], has since been amended to lower the "cap" recoverable for non- economic loss in a medical professional liability action.

missed. The circuit court concluded that Karpacs–Brown's allegations of vexatious conduct and bad faith against Woodbrook constituted, in reality, a third-party claim against Dr. Murthy's insurance carrier prohibited under West Virginia law. Consequently, Woodbrook was dismissed as a party-defendant.

On February 20, 2015, the circuit court conducted a hearing on the issue of attorney fees and costs pursuant to *Murthy I*. The hearing was abbreviated in nature and primarily consisted of the offering of pre-*Murthy I* documents and exhibits. No witnesses were called to testify. On March 24, 2015, the circuit court entered an order directing the parties to submit proposed findings of fact and conclusions of law within thirty days "from the entry of this Order" on whether attorney fees and costs should be awarded to Karpacs–Brown.

Nine days later on April 2, 2015, prior to the expiration of the thirty-day period, the circuit court entered an order awarding Karpacs–Brown attorney fees and costs. The precise calculation of the attorney fees and costs was to be later determined. The order was prepared by counsel for Karpacs–Brown. The record reflects that the proposed order was not served on Dr. Murthy.[4] The circuit

court's reasons for awarding attorney fees and costs were similar to those expressed in the July 29, 2008, order entered prior to *Murthy I*. Concluding that Dr. Murthy acted vexatiously and in bad faith, the circuit court found that (1) Dr. Murthy failed to participate ·in a meaningful way in court-ordered mediation,[5] (2) Dr. Murthy's expert witness, Dr. Abrahams, was deliberately under-prepared for his deposition, and the opportunity to proffer his testimony was abused and (3) Dr. Murthy ambushed Karpacs–Brown at trial by testifying, without prior notice, about an exculpatory conversation with the decedent.

Although Woodbrook had been dismissed as a party-defendant, the circuit court also awarded attorney fees and costs on the basis of Woodbrook's conduct in other cases. The circuit court referenced the unrelated *Roberts* case (*see* n. 2, *supra*) and noted that, although nothing was offered in settlement, a verdict in excess of $5.7 million was returned in *Roberts* against Dr. Murthy. The circuit court identified the *Roberts* case as part of Woodbrook's "track record in West Virginia and around the nation."

Dr. Murthy and Woodbrook filed separate petitions for appeal from the April 2, 2015, order.[6]

---

4. Although not raised as an assignment of error, this Court does not condone the manner in which the April 2, 2015, order was entered. In the prior March 24, 2015, order, the circuit court directed both parties to submit proposed findings of fact and conclusions of law within thirty days "from the entry of this Order" on whether attorney fees and costs should be awarded to Karpacs–Brown. Nine days later on April 2, 2015, prior to the expiration of the thirty-day period, the circuit court entered the proposed order submitted by counsel for Karpacs–Brown, again awarding attorney fees and costs. The precise calculation of the attorney fees and costs was to be later determined. Dr. Murthy had not been served with Karpacs–Brown's proposed order. Woodbrook's petition accurately states that pursuant to Trial Court Rule 24.01, a copy of any proposed order should have been served on opposing counsel, but on April 2, 2015, prior to expiration of the thirty-day period for submitting proposed orders, an order was entered by the Circuit Court, which represents that it was prepared by counsel for Ms. Karpacs–Brown, but is unsigned and which was not served on Dr. Murthy or Woodbrook, granting Ms. Karpacs–Brown's motion for attorney fees and costs.

The thirty-day time limit for the proposed findings and conclusions was set forth in the order of March 24, 2015, the remand hearing of February 20, 2015, notwithstanding. *See State ex rel. Erlewine v. Thompson*, 156 W.Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders."). Therefore, the April 2, 2015, order was prematurely and improperly entered.

5. The April 2, 2015, order stated with regard to mediation:

The present case was not the first time that Woodbrook had adopted this type of vexatious settlement strategy. Indeed, Woodbrook, formerly known as Medical Assurance, has a history of offering nothing and rejecting offers to mediate in even the most meritorious cases.

6. Woodbrook had only been a named party in the action from 2008, when Karpacs–Brown's amended complaint against Woodbrook was granted, until May 31, 2013, when the amended complaint was dismissed. Karpacs–Brown, thus, questioned Woodbrook's standing to file a petition for appeal in this Court. However, the April 2, 2015, order, once again, directed that Kar-

## III. Standards of Review

■ Our review of the attorney fees and costs awarded in this action falls within certain well-established principles. We begin with syllabus point 2 of *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986), which states: "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." *Accord* syl. pt. 1, *Corporation of Harpers Ferry v. Taylor*, 227 W.Va. 501, 711 S.E.2d 571 (2011). *See also Vanderbilt Mortgage and Finance, Inc. v. Cole*, 230 W.Va. 505, 515, 740 S.E.2d 562, 572 (2013) (Litigants bear their own attorney fees absent express authority for reimbursement.).

■ Nevertheless, a circuit court possesses discretionary authority, particularly in discovery matters, to award attorney fees and costs as a sanction for misconduct. Rule 37 of the *West Virginia Rules of Civil Procedure* which addresses the failure to cooperate in discovery is primary in that regard. Under Rule 37(b)(2), if a party "fails to obey an order to provide or permit discovery" or fails to supplement responses pursuant to Rule 26(e) [7], the circuit court has the discretion to order the party at fault to pay the reasonable expenses, including attorney's fees, caused by the failure, "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *See also* Rule 16(f), authorizing the circuit court to require the payment of reasonable expenses, including attorney fees, incurred because of noncompliance with scheduling orders or pretrial conferences.

■ The circuit court's discretion in this area, however, is not unfettered. *Bartles v. Hinkle*, 196 W.Va. 381, 390, 472 S.E.2d 827, 836 (1996), makes clear that both Rule 16(f) and 37(b) allow the imposition of only those sanctions that are "just." Thus, in syllabus point 2 of *Beto v. Stewart*, 213 W.Va. 355, 582 S.E.2d 802 (2003), this Court stated, in part: "The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." *See* syl. pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127 (1985) (The imposition of sanctions for the failure to obey an order to provide or permit discovery is reviewable under an abuse of discretion standard.); *Cox v. State*, 194 W.Va. 210, 218 n. 3, 460 S.E.2d 25, 33 n. 3 (1995) (concurring opinion, Justice Cleckley, stating sanctions are reviewable under an abuse of discretion standard, "but it is clear that a circuit court necessarily abuses its discretion if it bases its ruling on an erroneous assessment of the evidence or an erroneous view of the law.").

Finally, for the reasons thus stated, Karpacs–Brown's sole cross-assignment of error in this appeal, that the circuit court erred by granting Woodbrook's motion to dismiss the direct claims asserted against Woodbrook in Karpacs–Brown's amended complaint, is moot. Rather than as an impermissible third-party bad faith claim, this Court will review the attorney fees and costs issue, as against Woodbrook, in the context of the circuit court's authority to control matters before it through the imposition of sanctions.

---

pacs–Brown's attorney fees and costs would be born by Dr. Murthy or Woodbrook, *i.e.*, to be "born by the Defendant or the Defendant's insurer." The circuit court referred to Woodbrook throughout the order of April 2, 2015. Moreover, Karpacs–Brown repeatedly argued that Woodbrook's conduct should serve as a predicate for the imposition of attorney fees and costs against Dr. Murthy, Woodbrook's dismissal notwithstanding.

After the filing of Dr. Murthy and Woodbrook's petitions, Karpacs–Brown filed a motion to dismiss the appeals on the ground that, since the precise amount of attorney fees and costs payable to Karpacs–Brown was subject to the discretion of the circuit court, the April 2, 2015, order was interlocutory and not appealable. Karpacs–Brown filed an additional motion to dismiss which asserted that, as a non-party, Woodbrook lacked standing to challenge the April 2, 2015, order. On February 24, 2016, we denied both motions to dismiss. Consequently, the petitions for appeal of both Dr. Murthy and Woodbrook will be considered by this Court.

7. Rule 26(e)(2) states, in part:

A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which:

(A) The party knows that the response was incorrect when made, or,

(B) The party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## IV. Discussion

### A. Court–Ordered Mediation

In the April 2, 2015, order, the circuit court, once again, based the award of attorney fees and costs, in part, on its conclusion that Dr. Murthy failed to participate in a meaningful way in court-ordered mediation.

The procedural history with regard to mediation includes the following. In October 2003, the circuit court directed the parties to participate in mediation. *See W.Va. Code,* 55–7B–6b(b) [2001], of the *West Virginia Medical Professional Liability Act,* stating that the circuit court shall order the parties to participate in "mandatory mediation." In June 2004, the circuit court entered a second order which stated that the parties would be "permitted to engage in mediation" scheduled for August 5, 2004. However, correspondence from Dr. Murthy indicated that settlement was unlikely, and the August 5, 2004, mediation was cancelled. In April 2007, Karpacs–Brown filed a motion to compel mediation. The motion was granted, and the parties participated in mediation on July 30, 2007. Although offers and demands were made, mediation was unsuccessful. A subsequent attempt to settle the action in January 2008 was also unsuccessful.

Karpacs–Brown asserts that the circuit court properly awarded her attorney fees and costs based, in part, on Dr. Murthy's failure to meaningfully participate in mediation. In support, Karpacs–Brown indicates that mediation was unsuccessful because Dr. Murthy's medical liability policy contained a "consent to settle" clause which Dr. Murthy had not executed with Woodbrook. Nevertheless, Karpacs–Brown's subsequent motion to compel alleged that mediation should go forward because, by then, Dr. Murthy had executed the consent clause. Mediation, in fact, took place on July 30, 2007, although the action was never settled.

The July 30, 2007, mediation was attended by Karpacs–Brown, Dr. Murthy and their respective counsel. The mediation was also attended by a representative of Woodbrook, Dr. Murthy's medical liability insurance carrier. *See* syl. pt. 3, *Casaccio v. Curtiss,* 228 W.Va. 156, 718 S.E.2d 506 (2011)

(The insurance carrier for an insured party is considered a party to court-ordered mediation.). However, the fact that mediation is mandated under *W.Va. Code,* 55–7B–6b(b) [2001], of the *West Virginia Medical Professional Liability Act* does not mean that the parties are required to settle. *W.Va. Code,* 55–7B–6b(b) [2001], states further that mediation shall be conducted pursuant to Rule 25 of the *West Virginia Trial Court Rules.* Rule 25.11 states:

> No party may be compelled by these rules, the court, or the mediator to settle a case involuntarily or against the party's judgment. All parties involved in mediation, however, and their respective representatives, counsel, and insurance carriers shall participate fully, openly and knowledgeably in a mutual effort to examine and resolve issues. *"Bad faith," as used in insurance litigation as a legal term of art, is not applicable to the mediation process.*

(emphasis added)

The circuit court could have considered an independent sanction for Dr. Murthy's necessitating Karpacs–Brown's motion to compel mediation. Instead, the circuit court combined the purported failure to meaningfully participate in mediation with all other instances of alleged misconduct and awarded Karpacs–Brown attorney fees and costs, post-trial, with respect to the entire action. Given the complexity and length of the litigation, the awarding of sanctions should have been accompanied by discretionary rulings more contemporaneous with each transgression. Thus, even if Dr. Murthy had prompted a needless motion to compel mediation, the acceptable course would have been to award attorney fees and costs in connection with Dr. Murthy's conduct with respect to mediation, rather than adding that conduct as a justification to award fees and costs to Karpacs–Brown for the entire litigation.

The circuit court's ruling was not sufficiently reviewed and remedied on remand following *Murthy I.* Consequently, we find no basis in the April 2, 2015, order for the award of attorney fees and costs.

## B. Dr. Murthy's Expert Witness.

■ In the pre-*Murthy I* order of July 29, 2008, the circuit court also based its award of attorney fees and costs on its findings that Dr. Murthy's expert witness, Dr. Roger Abrahams, was deliberately under-prepared for his deposition and that Dr. Murthy later abused the opportunity to proffer his testimony. The circuit court determined that Dr. Murthy's proffer revealed that Dr. Abrahams would testify on a wide range of previously undisclosed subjects, "the majority of which flatly contradicted his prior deposition answers."

The remand of this action pursuant to *Murthy I* for an evidentiary hearing on the issue of attorney fees and costs required the circuit court to more precisely consider Dr. Murthy's conduct concerning Dr. Abrahams. However, again awarding attorney fees and costs to plaintiff Karpacs–Brown, the April 2, 2015, order is verbatim the same as the earlier July 29, 2008, order regarding Dr. Abrahams, with the exception of the following sentence: "Dr. Murthy's financial decision to deliberately under-prepare an expert for deposition only to persist for years in trying to tender that expert for further testimony is a serious discovery violation." However, there was no evidence to support the finding that Dr. Murthy's lawyers deliberately under-prepared their expert, Dr. Abrahams, as opposed to whether Dr. Abrahams himself adequately prepared for his deposition.

Dr. Murthy contends that the circuit court erred in awarding attorney fees and costs based on conduct involving Dr. Abrahams, since Karpacs–Brown simply conducted a successful deposition of Dr. Abrahams which ultimately resulted in the exclusion of his testimony. Moreover, Dr. Murthy asserts that the proffer fell within her right to preserve the record for appeal.

The issue arose as follows. In April 2004, Dr. Murthy disclosed Dr. Abrahams as an expert witness who would testify about the decedent's life expectancy in terms of the decedent's chronic obstructive pulmonary disease ("COPD"). During his deposition, however, Dr. Abrahams lacked an informed opinion. He indicated that his desire was to not bill "hours and hours" at that point in the litigation. When Karpacs–Brown filed a motion to exclude Dr. Abrahams's testimony, Dr. Murthy failed to respond. Finding Dr. Abrahams's testimony speculative, the circuit court entered an order in March 2007 concluding that Dr. Abrahams would not be permitted to testify at trial. Dr. Murthy made no attempts to supplement Dr. Abrahams's evidence. However, in December 2007, Dr. Murthy filed a motion to reconsider the March 2007 order. The circuit court denied the motion to reconsider on January 12, 2008.

Dr. Murthy proffered testimony from Dr. Abrahams by written submission. The circuit court stated that the court intended the proffer to cover only Dr. Abrahams's opinions which had been previously excluded under the March 2007 order. The circuit court, however, determined: "Dr. Murthy took advantage of the opportunity to submit a written proffer by using that proffer to disclose Dr. Abrahams to testify on a wide range of previously undisclosed subjects, the majority of which flatly contradicted his prior deposition answers."

In denying Dr. Murthy's post-trial motions, the circuit court stated: "[Dr. Murthy's] effort to identify new, wholly undisclosed opinions of Roger Abrahams during the middle of the trial and proffer them to the Court was properly and soundly rejected by this Court."

The exclusion of Dr. Abraham's opinion testimony at trial was not assigned as error in *Murthy I* and is relevant to the current appeal only insofar as it is among the reasons for the award of attorney fees and costs.

It is undisputed that Dr. Abrahams's testimony at his April 2004 deposition lacked much substance. Dr. Murthy did not contest Karpacs–Brown's motion to exclude Dr. Abrahams's testimony at trial. Upon the denial of the motion to reconsider, Dr. Murthy sought to preserve the record through the written proffer. While Dr. Murthy's proffer may have been beyond the scope and reach of Dr. Abrahams's deposition, this Court finds nothing new in the circuit court's decision on remand to warrant the award of

attorney fees and costs. The circuit court had issued the severe sanction that this expert could not testify at trial. Dr. Abrahams never testified at trial, and Dr. Murthy's proffer had no impact at trial justifying the imposition of an additional sanction.

■ The issue regarding Dr. Abrahams was part of the general conclusion of the circuit court that attorney fees and costs should be awarded because Dr. Murthy acted vexatiously and in bad faith. However, syllabus point 4 of *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986), holds:

> Bringing or defending an action to promote or protect one's economic or property interests does not *per se* constitute bad faith, vexatious, wanton or oppressive conduct within the meaning of the exceptional rule in equity authorizing an award to the prevailing litigant of his or her reasonable attorney's fees as "costs" of the action.

*Accord* syl. pt. 6, *Verba v. Ghaphery*, 210 W.Va. 30, 552 S.E.2d 406 (2001).

### C. Dr. Murthy's Trial Testimony

■ It is a trial lawyer's "dream come true" when a party testifies at trial differently from his or her sworn deposition testimony. Suddenly, there is a "fertile field of inconsistencies" opened for cross-examination. "Were you lying then, or are you lying now?"

In Dr. Murthy's deposition testimony and discovery responses, she stated that she could not remember any specific conversations with the Karpacs family at the hospital, nor any conversations with the decedent, other than taking the decedent's medical history and stating that they had to wait on test results before knowing how to proceed. However, in the pre-*Murthy I* order of July 29, 2008, the circuit court based its award of attorney fees and costs, in part, on its finding that Dr. Murthy ambushed Karpacs–Brown at trial by testifying, without prior notice, about an exculpatory conversation with the decedent, *i.e.*, that the decedent expressed extreme fear at the prospect of surgery, telling Dr. Murthy, "Please don't tell me I need surgery." Nevertheless, Karpacs–Brown's lawyer had a field day cross-examining Dr. Murthy about the change in her

testimony. It obviously buttressed the case against Dr. Murthy and resulted in a large verdict. It was a "dream come true."

On appeal in *Murthy I*, Dr. Murthy contended that "her single episode of impeached trial testimony" should not serve as a basis to award attorney fees and costs for the entire litigation. Karpacs–Brown asserted that Dr. Murthy's trial testimony was inherently incredible. Upon remand, the circuit court again awarded attorney fees and costs, in part, on its finding that Dr. Murthy ambushed Karpacs–Brown at trial by testifying, without prior notice, about the exculpatory conversation with the decedent. The findings of fact set forth in the April 2, 2015, order are verbatim the same as in the order of July 29, 2008. In its conclusions of law, the circuit court determined that Dr. Murthy should have supplemented her discovery responses pursuant to Rule 26(e) by disclosing the exculpatory conversation (*see* n. 7, *supra*) and that Dr. Murthy's reference to the conversation at trial constituted a material change in testimony which, along with Dr. Murthy's other transgressions, warranted the imposition of a sanction.

■ Syllabus points 3 and 5 of *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983), state:

> 3. Rule 26(e)(2) of the Rules of Civil Procedure imposes a continuing obligation to supplement responses previously made when, in light of subsequent information, the original response is incorrect.

> 5. Factors to be considered in determining whether the failure to supplement discovery requests under Rule 26(e)(2) of the Rules of Civil Procedure should require exclusion of evidence related to the supplementary material include: (1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the ability of that party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded.

*See generally* Franklin D. Cleckley, Robin Jean Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 26(e) (4th ed. 2012) (discussing Rule 26(e) and citing *Prager*).

Dr. Murthy maintains that during her trial testimony her recollection of the conversation with the decedent was triggered by the questions directed to her by counsel. Moreover, Dr. Murthy insists that the conversation was not particularly relevant because most patients hope that they do not need surgery and that the conversation with the decedent did not change the issue of whether surgery was necessary or whether Dr. Murthy committed malpractice in her treatment of the decedent. Dr. Murthy asserts:

> Murthy and her counsel were not in a position to be amending interrogatory answers made approximately 5 years earlier when the refreshed recollection occurred while [Dr. Murthy] was on the stand under cross-examination. Therefore, West Virginia Rule of Civil Procedure 26(e) has no application here.

> It should also be noted that Murthy was subject to being impeached on the issue that would have potentially undermined her credibility in the eyes of the jury. Given that the jury returned a verdict against her, this issue has more than sufficiently been addressed by the jury.

Dr. Murthy's argument regarding this assignment of error is persuasive, especially since the circuit court considered the testimony to be simply another factor in awarding attorney fees and costs for the entire litigation. We find no basis in the circuit court's reconsideration on remand with respect to Dr. Murthy's trial testimony to warrant the award of attorney fees and costs for the entire trial. *See Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 278, 406 S.E.2d 700, 709, *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991) (Property owner was not entitled to attorney fees and costs based on Potomac Edison's erroneous representation that property owner owned a utility pole involved in the accident, where Potomac Edison did not act in bad faith, vexatiously, wantonly or for oppressive reasons.).[8]

## V. Conclusion

Both the pre-*Murthy I* order of July 29, 2008, and the virtually identical post-*Murthy I* April 2, 2015, order fail to support an award of attorney fees and costs in favor of plaintiff Karpacs–Brown, to be paid by Dr. Murthy or her medical professional liability insurance carrier, Woodbrook. The award of attorney fees and costs, therefore, constitutes an abuse of discretion. We reverse the April 2, 2015, order of the Circuit Court of Wetzel County and set aside Karpacs–Brown's award of attorney fees and costs, with prejudice.

Reversed.

JUSTICE WORKMAN concurs and reserves the right to file a concurring Opinion.

---

8. Although it does not affect the outcome of this appeal, we note that the following assignment of error raised by Dr. Murthy concerning the *Roberts* case and other outside matters lacks merit.

In remanding this action to the circuit court, we included, in *Murthy I*, the admonition that it is improper to impose sanctions on a party "for general misconduct which is unrelated to any identifiable harm suffered by the other party in the case." 224 W.Va. at 526, 686 S.E.2d at 756. In support thereof, we cited syllabus point 1 of *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996), which states, in part:

> The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must insure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

Here, the circuit court cited the *Roberts* case and noted that, although nothing was offered in settlement, a verdict in excess of $5.7 million, in *Roberts*, was returned against Dr. Murthy. The circuit court stated that Woodbrook had a "history of offering nothing and rejecting offers." Moreover, the circuit court (1) cited a 2001 newspaper article from *The Charleston Gazette* concerning Woodbrook's search for expert witnesses as an alternative to mediation, (2) quoted a comment by Woodbrook to its stockholders regarding spending to contest claims and (3) referred to a Dr. Austin in an unrelated case who was allegedly encouraged by Woodbrook to falsify trial testimony.

The circuit court, however, indicated that it considered the *Roberts* case and the other outside matters only insofar as they disprove an innocent or good-faith explanation for the alleged discovery abuses in this action. This Court concludes that the circuit court's reason for such limited consideration of the outside matters does not conflict with the admonition in *Murthy I* that unrelated misconduct was not to be considered.

502

Workman, J., concurring:

I concur but write separately to accentuate the existence of viable foundations upon which a nuanced order of sanctions *could have been* premised. An order sanctioning a party is subject to an abuse of discretion analysis. *See Bartles v. Hinkle*, 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996). A vital component of such discretion is the ability of a trial court, from the unique perspective it occupies, to sanction a party for misconduct.

As the majority references, the trial court could have sanctioned the defendant for individual instances of litigation abuse. The defendant's behavior with regard to mediation attempts, for instance, could have been separately addressed. The trial court should have more specifically identified each component of the objectionable conduct, considered less stringent sanctions, and fashioned a reasonable sanction appropriate to each identified transgression. If the sanctions had been independently fashioned to address the defendant's questionable actions during this protracted litigation, this Court possibly could have had a basis upon which to affirm the trial court's rulings, thus preserving the inherent and discretionary power of a trial court to control the proceedings of litigation. Instead, the trial court made only a faint attempt on remand to provide this Court with an adequate basis upon which to sustain its determination.